IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| STEVE BULLOCK, in his official capacity as Governor of Montana; MONTANA DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION,<br><br>                                    Plaintiffs,<br><br>                    vs.<br><br>BUREAU OF LAND MANAGEMENT; WILLIAM PENDLEY, in his official capacity as the person exercising the authority of the Director of the Bureau of Land Management; UNITED STATES DEPARTMENT OF THE INTERIOR; DAVID BERNHARDT, in his official capacity as Secretary of the Department of the Interior,<br><br>                                    Defendants. | Case No. 4:20-cv-00062-BMM |

## DECLARATION OF JOHN E. TUBBS

I, John E. Tubbs, declare as follows:

1.  I am the Director of the Department of Natural Resources and Conservation (DNRC) for the State of Montana. In that role, I carry out the DNRC's mission and constitutional and statutory responsibilities of the agency. The DNRC has four divisions: the Trust Lands Management Division, the Water Resources Division, the Forestry Division, and the Conservation and Resource Development Division. The DNRC also has a number of administrative attachments.

2. The DNRC's mission is to help ensure that Montana's land and water resources provide benefits for present and future generations. The Trust Lands Management Division oversees 5.2 million acres of state surface trust land and 5.8 million acres of the mineral estate. Through programs including sustainable forestry, agriculture, grazing and energy leasing, the DNRC generates millions of dollars annually for public education, including school facilities and classroom technology. Montana's trust lands are a vital component of local economies and also provide tremendous recreation opportunities. Often, state trust lands abut BLM lands or are in a checkerboarded configuration among them, along with private land.

3. In addition to serving as the Director of the DNRC, I also serve as Chair of the Montana Sage Grouse Oversight Team (MSGOT) as defined in 2-15-243 Mont. Code Ann. The MSGOT oversees implementation of Montana's Sage Grouse Conservation Strategy by the Sage Grouse Habitat Conservation Program (Program). MSGOT and the Program implement the Greater Sage Grouse Stewardship Act along with Executive Order 12-2015 and 21-2015. The Program is housed within the DNRC.

4. I offer this declaration to explain why it is imperative that this Court expedite review of William Perry Pendley's continued performance as Acting Director of the Bureau of Land Management (BLM) while his nomination to become the Director pends before the Senate.

5. In general terms, since January of 2017, when Mr. Pendley became Acting Director, the BLM's leadership and policies have been in flux. Without being fully confirmed, BLM's lack of clear leadership continues to cloud the agency's decision-making process. Since his June 30, 2020 nomination, Mr. Pendley has continued to act unlawfully as the Bureau's Director, directing policies, making decisions, and taking actions that injure Montana. The DNRC and its staff faced continued uncertainty over land management and had to adjust the way we undergo our business and agency function because of the changing federal landscape. And because Mr. Pendley's authority is under a cloud, my ability to make reasoned, informed decisions to manage and conserve Montana's natural resources is impaired.

6.      One example of explicit harm to Montana and the DNRC is in the area of Sage Grouse management. The chaos that has unfolded since Mr. Pendley has been at the helm of BLM can be characterized as a policy whipsaw. In 2010, the U.S. Fish and Wildlife Service (USFWS or Service) flagged the lack of adequate regulatory mechanisms as the primary reason that Endangered Species Act (ESA or Act) protections were warranted for the Sage Grouse throughout its range. In 2015, USFWS concluded that the regulatory mechanisms adopted by the BLM, the U.S. Forest Service, and by three key states (including Montana) were adequate to ameliorate the primary threats, which specifically included oil and gas development. Montana reacted by passing the Montana Sage Grouse Stewardship Act. 76-22-101 et

seq, Mont. Code Ann. Federal land use plans filled the gaps and provided the high degree of certainty required by USFWS to demonstrate threats would be reduced across approximately 90 percent of the breeding habitat and the majority of occupied habitat.

7.      The 2015 BLM plans stated additional implementation guidance would be needed, including how to prioritize future oil and gas leasing and development. On September 1, 2016, BLM leadership issued Instructional Memorandum (IM) 2016-143, Oil & Gas Leasing and Development Sequential Prioritization. This IM was to guide prioritization decisions, consistent with the 2015 BLM plans. The National Directives issued under current BLM leadership have changed BLM policy and then clouded implementation of the 2015 plans, thus calling into question the efficacy of the BLM Plans for purposes of adequately reducing threats attributed to oil and gas development. The new directives altered the overall regulatory framework applicable across all BLM lands in 11 states throughout Sage Grouse range, including Montana. Habitat integrity on state and private lands adjacent to BLM lands were also indirectly affected by changes in BLM policies. Most critically, the National Directives altered the regulatory framework upon which the USFWS had relied in 2015 when concluding that threats would be sufficiently ameliorated and, more specifically, that "potential risk from nonrenewable energy development is substantially reduced [...]" by the regulatory mechanisms enacted since 2010.

8.      The confusion continued. As a member and then Chairperson of MSGOT, I was concerned that the national directives and new BLM policies disproportionately impacted Montana and landowners because of the haphazard patterns of oil and gas development that was encouraged by BLM and that this could hasten the need for ESA protections. This was an especially acute concern given that in Montana BLM surface lands are intermingled with other surface owners in a checkerboard fashion and increased fragmentation of the remaining large blocks of habitat is antithetical to Sage Grouse conservation. To that end, Montana was very concerned that the national directives and new policies eroded the very underpinnings that are critical to keeping the Sage Grouse from being listed as a protected species under ESA, especially given how important BLM management is to our state management plan.

9.      On August 4, 2020, BLM issued a new IM pertaining to BLM leasing entitled *Implementation of a Sage-Grouse Prioritization Sequence Consistent with 2015 Sage-Grouse Resource Management Plans and Montana District Court Order in Case No. 4:18-cv-00069-BMM (5/22/2020).* Once again, this was a shift in policy arising out of BLM's loss in Federal Court.

10.     Montana suffers damage without a consistent commitment to preservation and appropriate and consistent management. Mr. Pendley's lack of official status frustrates my ability to fulfill my mission as Director of DNRC by making

it impossible to appeal to the BLM for support and collaboration because its current head lacks legitimate authority to lead it. We cannot effectively coordinate with a federal agency that is without accountability and a leader who lacks Senate confirmation can be accountable to no one.

11.    If called as a witness, I could and would testify to the foregoing facts.

12.    I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Respectfully submitted,

/s/

Executed on August 20, 2020.                  John Tubbs