IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| STEVE BULLOCK, in his official capacity as Governor of Montana; MONTANA DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION,<br><br>Plaintiffs,<br><br>vs.<br><br>BUREAU OF LAND MANAGEMENT; WILLIAM PENDLEY, in his official capacity as the person exercising the authority of the Director of the Bureau of Land Management; UNITED STATES DEPARTMENT OF THE INTERIOR; DAVID BERNHARDT, in his official capacity as Secretary of the Department of the Interior,<br><br>Defendants. | Case No. 4:20-cv-00062-BMM |

DECLARATION OF MARTHA WILLIAMS

I, Martha Williams, declare as follows:

1. I am the Director of the Department of Fish, Wildlife and Parks (DFWP) for the State of Montana. I offer this declaration to explain why it is imperative that this Court expedite review of William Perry Pendley's continued performance as acting director of the Bureau of Land Management, and to provide some examples of how his unlawful tenure as acting director causes the State ongoing harm.

2. Without expedited review, the State of Montana and DFWP will continue to face uncertainty in the context of resource, land, and habitat management—issues of

particular consequence in this moment, because the Bureau and Mr. Pendley recently began to implement two land management plans that directly and adversely impact the State of Montana.

3. During his tenure as acting director, Mr. Pendley has engaged in policymaking that fails to integrate most local input and has forsaken any attempt to set forth a consistent land management policy across states to protect Greater Sage Grouse and other sensitive wildlife habitat. In addition, he has unilaterally expanded oil and gas leasing in that habitat. All of these actions threaten decades of the State's work and risks Montana's economic and environmental wellbeing.

4. Moreover, since his June 30, 2020 nomination, Mr. Pendley has continued to unlawfully exercise the authority of the Bureau's Director, implementing plans and taking actions that cause further injury to Montana and which, importantly, may lack legal force because Pendley's service as acting director is itself uncertain, if not obviously unlawful. To be clear, Mr. Pendley's continued unlawful oversight of the Bureau sows uncertainty.

5. DFWP's mission is to provide for the stewardship of the fish, wildlife, parks, and recreational resources of Montana, while contributing to the quality of life for present and future generations. DFWP supervises Montana's fish and wildlife resources, including over a half a million acres of conservation easements and over

400,000 acres of lands under the control of DFWP, all meant to conserve the fish and wildlife habitat of Montana.

6. I was first appointed Director of DFWP in January 2017, after serving for four years as a law professor at the University of Montana School of Law and for nearly two years as the Deputy Solicitor Parks and Wildlife of the U.S. Department of the Interior. I have worked for DFWP for more than eighteen years, including time as the agency's legal counsel advising the department and defending its actions in litigation.

7. I also serve as vice president for the Western Association of Fish and Wildlife Agencies and as Chair of the Interagency Grizzly Bear Committee, which is made up of state and federal land management agencies that manage grizzly bear habitat.

8. On June 30, 2020, President Trump nominated Mr. Pendley to become the Director of the Bureau. The Senate received his nomination and referred it to the Committee on Energy and Natural Resources. It is my understanding that, on or around August 15, President Trump withdrew Mr. Pendley's nomination in the face of strong bipartisan opposition, and yet Mr. Pendley's day-to-day functions as acting director remain unchanged, casting further doubt and uncertainty about the lawfulness of his actions—and by extension, the actions of the Bureau.

9. To provide specific examples of the harms Mr. Pendley's continued leadership has caused and will continue to cause, several weeks after Mr. Pendley's nomination, the Bureau approved two resource management plans for public lands in central and

western Montana. Mr. Pendley touted the virtues of these resource management plans, claiming credit for "ensuring conservation stewardship and outdoor recreation is preserved and expanded upon." In fact these plans make available 95 percent of federal public land in Montana to oil and gas development.

10. But this is part and parcel to the Bureau's practice in the last three years. During that time, it has offered literally hundreds of oil and gas leases on priority and general habitat land. The eventual oil and gas development that will take place on this habitat land will create disturbances. The resulting checkerboard of development will undermine our efforts to consistently and broadly conserve habitat that is essential not only to Greater Sage Grouse, but many species whose health and wellbeing is linked with that of Greater Sage Grouse.

11. In addition to Mr. Pendley's actions approving oil-and-gas leases in Montana, the newly approved resource management plans significantly increase the potential for negative impacts on Greater Sage Grouse and their habitats—and therefore also increase the potential that the species will be listed as endangered. The U.S. Fish and Wildlife Service's 2010 decision not to immediately list Greater Sage Grouse under the Endangered Species Act gave state and federal governments an opportunity to collaborate and take preventative action. USFWS observed then that the Greater Sage Grouse was in grave danger, its habitat fragmented and unregulated. The fact that the species has remained unlisted since is largely due to formal and definitive

commitments in the form of Bureau plans initiated in 2015 that protect Greater Sage Grouse habitats in Montana. USFWS reviewed these plans and chose again in 2015 not to list the Greater Sage Grouse because the plans were commitments meant to continue protecting the habitat for the next several decades.

12. The Bureau's recent actions reversing many of those commitments jeopardizes the species' status. As Governor Bullock articulated in Montana's Governor Compliance Review letter, under the Bureau's new plans, it will "approve" any surface disturbance or occupancy plan, with mere "notification" to the State (rather than in consultation with the State). This represents a reduced commitment to Greater Sage Grouse in Montana and increases potential for future listing of the Greater Sage Grouse under the ESA to the detriment of public land management in Montana and across the species' range. If sage grouse were listed as an endangered species, it would catastrophically harm the State, not only by requiring significant employee time as well as State money and resources to comply with the requirements of the Endangered Species Act, but also by limiting use and development of state, federal, and even private land. The economic and environmental consequences of such a listing cannot be overstated.

13. In deciding again in 2015 not to list the Greater Sage Grouse, USFWS mandated that DFWP assess the population and habitat status of the Greater Sage Grouse five years after its decision, to be completed in 2020. To comply with this

federal mandate, DFWP is conducting the necessary review, a process which must be completed by the end of the year. Because of the Bureau's actions under Mr. Pendley's direction—including the agency's course reversal in its approval of two recent land-management plans—DFWP cannot be certain what to expect next in terms of the Bureau's oil and gas leasing decisions and related issues because the Bureau's most recent decisions unequivocally alter sage grouse habitat and affect population modeling. These changes have necessarily caused (and will continue to cause) DFWP to spend more of its limited staff time and resources to account for these changes during its ongoing five-year review. As a result, DFWP has had to dedicate additional resources by agency personnel to plan for next steps in conducting the assessment, including adapting to changing circumstances including the absence of a lawfully appointed Director. In addition, due to the uncertain nature of the Director's continued tenure, DFWP will likely be forced to completely redo its assessment in light of the Bureau's changing land management decisions. This may even necessitate another USFWS listing decision.

14. Beyond these assessment responsibilities, DFWP manages more than a million acres of wildlife habitat on land it owns or controls and as a result of development restrictions in its conservation easements. DFWP relies heavily upon its ability to control the surface disturbance of those lands. With the Bureau's newfound commitment to increased oil and gas leasing and increased exploration and

development, DFWP has spent and will continue to spend considerably more time and resources on determining whether the habitat under its purview will be impacted beyond repair.

15. So long as Mr. Pendley is permitted to continue as the Bureau's acting director, the recent resource management plans for Missoula and Lewistown will proceed and require DFWP's effort and attention. The plans necessarily alter how DFWP manages its lands. While it is impossible to predict every way in which Mr. Pendley's unlawful supervision of federal lands in Montana will impact DFWP, it is certain that the Bureau's recent actions have forced DFWP employees to direct their attention to assessing Greater Sage Grouse habitat in ways that were previously unnecessary. Development is now far likelier to occur in areas where DFWP has restored habitat and successfully conserved spaces for Greater Sage Grouse and related lands that have contributed to the overall proliferation of wildlife populations. This type of conservation has been championed not only by Montanans in Montana, but by conservationists around the world. The Bureau's recent actions will likely dismantle DFWP's achievements.

16. Mr. Pendley's continued ability to implement plans and roll back protections thwarts DFWP's mission by undermining decades of collaborative work the State has engaged in and by making the landscape on which we operate unstable and unpredictable. Mr. Pendley's actions have injured and blocked MTFWP's ability to

achieve its charge of conserving the State's fish and wildlife resources for current and future generations. Our ability to achieve our mission requires work that requires a delicate balance and that takes many years of building trust and relationships, such that undermining actions tips that balance for decades to come.

17. Mr. Pendley frustrates my ability to fulfill my mission as Director of DFWP by making it impossible to appeal to the BLM for support and collaboration because its current head lacks legitimate authority to lead it. We cannot effectively coordinate with a federal agency that is without accountability and a leader who lacks Senate confirmation can be accountable to no one.

18. Even since June 30, Mr. Pendley's actions have caused particular consternation and instability for DFWP. Accordingly, I request that the Court expedite consideration of this case.

19. If called as a witness, I could and would testify to the foregoing facts.

20. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Respectfully submitted,

/s/ Martha Williams

Executed on August 20, 2020.