# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| STEVE BULLOCK, in his official capacity as Governor of Montana; *et al.,* | Case No. 4:20-cv-00062-BMM |
| Plaintiffs, | **DEFENDANTS' BRIEF IN RESPONSE TO COURT'S ORDER** |
| vs. | |
| BUREAU OF LAND MANAGEMENT; *et al.,* | |
| Defendants. | |

JEFFREY B. CLARK
Acting Assistant Attorney General
CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch
M. ANDREW ZEE
CHRISTOPHER D. DODGE
Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
450 Golden Gate Avenue
San Francisco, CA 94102
Phone: (415) 436-6646
E-mail: m.andrew.zee@usdoj.gov

KURT G. ALME
United States Attorney
MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 2nd Avenue North, Suite 3200
Billings, MT 59101

Of Counsel:
HUBBEL R. RELAT
Deputy Solicitor - General Law
Department of the Interior

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

I.    THERE IS NO BASIS TO SET ASIDE THE LEWISTOWN OR MISSOULA RMPs, OR TO SET ASIDE ANY ACT BY MR. PENDLEY. ..........................................................................................2

    A.    Mr. Pendley took no action on the Governor's Consistency Review or the resolution of protests on the Missoula and Lewistown RMPs. ..............................................................3

        1.    Mr. Pendley did not act on Governor Bullock's Consistency Review recommendations because the Governor failed to appeal to Mr. Pendley. ..........................................................3

        2.    The BLM Director's authority to resolve RMP protests is a delegable duty that was properly delegated to, and exercised by, a subordinate BLM official for the Missoula and Lewistown RMPs. ..............................................5

    B.    Defendants are aware of no acts by Mr. Pendley that should be set aside under 5 U.S.C. § 3348(d)(1) and 5 U.S.C. § 706(2)(A). ....................10

II.    THE COURT'S REMEDIAL POWER IS LIMITED TO PLAINTIFFS' INJURIES-IN-FACT, OF WHICH THERE ARE NONE.....................................................................................................13

CONCLUSION ...................................................................................................18

i

# TABLE OF AUTHORITIES

## Cases

*Casa de Maryland, Inc. v. Wolf,*
   No. 8:20-CV-02118-PX, 2020 WL 5500165 (D. Md. Sept. 11, 2020) ......................17

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006)...........................................................................................15

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
   561 U.S. 477 (2010)...........................................................................................17

*Gator.com Corp. v. L.L. Bean, Inc.,*
   398 F.3d 1125 (9th Cir. 2005) ...........................................................................14

*Genesis Healthcare Corp. v. Symczyk,*
   569 U.S. 66 (2013)..............................................................................................18

*Gill v. Whitford,*
   138 S. Ct. 1916 (2018) ..................................................................................*passim*

*Guedes v. ATF,*
   920 F.3d 1 (D.C. Cir. 2019) ......................................................................... 11, 16

*Hollingsworth v. Perry,*
   570 U.S. 693 (2013)............................................................................................15

*Knapp v. Miller,*
   863 F. Supp. 1221 (D. Nev. 1994).....................................................................16

*Krottner v. Starbucks Corp.,*
   628 F.3d 1139 (9th Cir. 2010) ...........................................................................14

*L.M.-M. v. Cuccinelli,*
   442 F. Supp. 3d 1 (D.D.C. 2020).......................................................................17

*Lewis v. Casey,*
  518 U.S. 343 (1996)..................................................................................14, 15

*Loma Linda Univ. v. Schweiker,*
  705 F.2d 1123 (9th Cir. 1983) .........................................................................6

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992)........................................................................................14

*NLRB v. Noel Canning,*
  573 U.S. 513 (2014).........................................................................................17

*NLRB v. SW Gen., Inc.,*
  137 S. Ct. 929 (2017) ......................................................................................17

*Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n.,*
  457 F.3d 941 (9th Cir. 2006) ..........................................................................14

*Or. Prescription Drug Monitoring Program v. U.S. DEA,*
  860 F.3d 1228 (9th Cir. 2017) ........................................................................15

*Salmon Spawning & Recovery All. v. Gutierrez,*
  545 F.3d 1220 (9th Cir. 2008) ........................................................................16

*Schaghticoke Tribal Nation v. Kempthorne,*
  587 F. Supp. 2d 389 (D. Conn. 2008)..............................................................7

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
  140 S. Ct. 2183 (2020) ....................................................................................17

*Stand Up for California! v. U.S. Dep't of Interior,*
  298 F. Supp. 3d 136 (D.D.C. 2018) .............................................................. 7, 8

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998)...........................................................................................17

*U.S. Telecom Ass'n v. FCC,*
  359 F.3d 554 (D.C. Cir. 2004)..........................................................................7

*United Mine Workers v. Gibbs,*
    383 U.S. 715 (1966) ................................................................................13

*United States v. City of Twin Falls,*
    806 F.2d 862 (9th Cir. 1986) ................................................................13

*United States v. Harris County,*
    2017 WL 7692396 (S.D. Tex. Apr. 26, 2017) ....................................12

*United States v. Sineneng-Smith,*
    140 S. Ct. 1575 (2020) ..........................................................................17

*Defs. of Wildlife v. U.S. EPA,*
    420 F.3d 946 (9th Cir. 2005) ...............................................................16

**Statutes**

5 U.S.C. § 706 ...............................................................................................*passim*

5 U.S.C. § 3348 .............................................................................................*passim*

43 U.S.C. § 1714 ..................................................................................................6

**Regulations**

43 C.F.R. § 20.202 ...............................................................................................7

43 C.F.R. § 1610.3-2 ........................................................................................ 4, 5

43 C.F.R. § 1610.5-2 ....................................................................................*passim*

43 C.F.R. § 3191.2 ......................................................................................... 6, 7

85 Fed. Reg. 47,238 (Aug. 4, 2020) ...................................................................9

85 Fed. Reg. 47,239 (Aug. 4, 2020) ...................................................................9

**Other Authorities**

*Guidance on the Application of the Federal Vacancies Reform Act of 1998*,
   23 Op. O.L.C. 60 (1999) ....................................................................................12

S. Rep. No. 105-250 (1988)................................................................................11

85 Fed. Reg. 47,238 (Aug. 4, 2020).....................................................................9

85 Fed. Reg. 47,239 (Aug. 4, 2020).....................................................................9

## INTRODUCTION

This Court has directed the parties to identify which "acts of [William Perry] Pendley" should be set aside under the Federal Vacancies Reform Act and the Administrative Procedure Act.  *See* Order at 34, ECF No. 25.  The answer is none. Careful review shows no relevant acts taken by Mr. Pendley—rather than by other Bureau of Land Management officials—much less any within the Director's exclusive authority.

The alleged acts by Mr. Pendley on which Plaintiffs focused at summary judgment—and to which the Court has directed the parties' attention—are the 2020 Missoula and Lewistown Resource Management Plans ("RMPs"), specifically the resolution of public protests and responses to the Governor's Consistency Review recommendations on those RMPs.  But Plaintiffs never filed protests on the RMPs. And even if Bureau action on other parties' protests could have injured Plaintiffs, it was not Mr. Pendley who took any such action; rather, as Defendants showed, they were resolved by a BLM Assistant Director who has been delegated the authority to do so under longstanding BLM policy.   Plaintiffs point only to a formal but imprecise Federal Register reference to "the Director's" role in resolving those RMP-related protests. Likewise, while the Governor submitted recommendations regarding the RMPs under the Consistency Review process, he never sought review by the Director.   His recommendations were resolved by a lower-level Bureau official, and Mr. Pendley again had no role.

1

Nor are there "any other BLM Director exclusive functions or duties that Pendley [has] performed."   Order at 34.   BLM has reviewed the statutes and regulations granting authority to the BLM Director and has determined that there has been no act by Mr. Pendley that could meet the criteria of 5 U.S.C. § 3348(d)(1)—the performance of a function or duty by the BLM Director that could not be delegated to another official.

More fundamentally, this review emphasizes not just the lack of any specific acts to be remedied, but the lack of subject-matter jurisdiction over Plaintiffs' claims entirely. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," and the Court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 138 S. Ct. 1916, 1921, 1933-34 (2018). Thus, if this Court can set aside any action by Mr. Pendley on grounds that his exercise of the BLM Director's functions and duties was impermissible, it must be an action that Plaintiffs have identified as causing them injury.   There is none here.   And even if actions beyond those alleged by Plaintiffs here could be identified as ones that could be set aside under § 3348(d)(1) and § 706(2)(A), Article III limitations on courts' remedial authority would prohibit such invalidation.

## ARGUMENT

## I.   THERE IS NO BASIS TO SET ASIDE THE LEWISTOWN OR MISSOULA RMPs, OR TO SET ASIDE ANY ACT BY MR. PENDLEY.

The Court directed the parties to address whether the Lewistown and Missoula RMPs, or any other "acts of Pendley," "should be set aside under 5 U.S.C. § 3348(d)(1)

2

and 5 U.S.C. § 706(2)(A)." Order at 34. The record shows that Mr. Pendley performed no action in connection with the Lewistown and Missoula RMPs. The resolution of protests was instead properly delegated to another BLM official under longstanding BLM practice. Thus, there is no basis to set aside these RMPs under the FVRA or APA. In addition, even assuming this Court had jurisdiction to set aside acts unrelated to Plaintiffs' asserted Article III injuries (which it does not), Mr. Pendley took no actions under the Director's authority that fall within the scope of FVRA § 3348(d)(1), and there is thus nothing for the Court to set aside. The Court should decline to award any additional remedy.

### A. Mr. Pendley took no action on the Governor's Consistency Review or the resolution of protests on the Missoula and Lewistown RMPs.

The Court concluded that Mr. Pendley played a role both in reviewing the Governor's Consistency Review recommendations for the Missoula and Lewistown RMPs and in resolving non-party protests. Order at 14. Respectfully, those factual conclusions are not supported by the record.

> 1. *Mr. Pendley did not act on Governor Bullock's Consistency Review recommendations because the Governor failed to appeal to Mr. Pendley.*

*First*, Mr. Pendley took no action on Governor Bullock's Consistency Review recommendations. Rather, the Governor's Consistency Review letters were reviewed and responded to by BLM Montana/Dakotas State Director John Mehlhoff, not Mr. Pendley. *See* Declaration of Amanda Kaster ¶¶ 17, 22-23, ECF No. 17-2. And the Governor undisputedly failed to appeal the State Director's response to the BLM Director. *See* Compl. ¶¶ 71-74; attached Declaration of Brian St. George Decl. ¶ 22.

3

BLM regulations allow for a "Consistency Review" that uniquely allows Governors to "identify any known inconsistencies" between RMPs and "State or local plans, policies or programs."   43 C.F.R. § 1610.3-2(e).   The regulations first grant the Governor a period "to identify inconsistencies and provide recommendations in writing to the State Director."   *Id.*   Governor Bullock took this first step by sending recommendations to State Director Mehlhoff.   *See* St. George Decl., Exs. F & G; *see also* Order at 13-14 (noting that "Montana availed itself of those opportunities.").   Mr. Mehlhoff, in accordance with the regulations, responded to those recommendations, explaining that he found no inconsistencies between state plans and the Missoula and Lewiston RMPs.   *See* Order at 14 ("The Montana State BLM Director found no inconsistencies between the RMPs and the recommendations filed by Montana (citing ECF No. 10-5, Ex. E)).

But the regulations also provide for a second step: the Governor has 30 days from the State Director's letter to submit a written appeal to the Director.   43 C.F.R. § 1610.3-2(e).   Governor Bullock did not submit any such written appeal.   And Mr. Mehlhoff's April 30, 2020 letter did not, as the Court concluded, "refer[] any disagreement to the BLM Director."   Order at 14; *see* St. George Decl. ¶ 21; Compl. ¶¶ 71-74 (noting Mr. Mehlhoff's response, but not alleging an appeal by the Governor to Mr. Pendley).[1]   Instead, consistent with the regulation, Mr. Mehlhoff merely advised

---

[1] The BLM Director's Summary Protest Resolution Report for the Lewistown RMP does not show that Mr. Pendley responded to the Governor's recommendations.

4

Governor Bullock of his right to appeal: "Please note that you have the opportunity to appeal this response to the Director of the BLM pursuant to 43 C.F.R. § 1610.3-2(e). An appeal must be filed within 30 days of your receipt of this letter."   St George Decl. ¶ 21 & Ex. H at 7.

Mr. Pendley took no action on the Governor's Consistency Review recommendations because the Governor never availed himself of his right to appeal the State Director's determinations to the BLM Director.

> 2.   *The BLM Director's authority to resolve RMP protests is a delegable duty that was properly delegated to, and exercised by, a subordinate BLM official for the Missoula and Lewistown RMPs.*

*Second*, as for the resolution of public protests, Defendants showed at summary judgment that it was BLM Acting Assistant Director Brian St. George, not Mr. Pendley, who resolved the Missoula and Lewistown RMP protests.   Kaster Decl. ¶¶ 15-16.   Mr. St. George's own declaration leaves no question as to that.   St. George Decl. ¶¶ 18-19 & Exs. D & E.   To be sure, BLM's regulation on RMP protests provides that "[t]he Director shall promptly render a decision on [a] protest" and that "[t]he decision of the Director shall be the final decision of the Department of the Interior."   43 C.F.R. § 1610.5-2(a)(3), (b).   But nowhere does § 1610.5-2 state that *only* the Director can perform this function, or that it cannot be delegated to a different official.   Instead, the

---

*See* Order at 13-14; ECF No. 10-5, Ex. H.   That Report responded to *public protests*, not the Governor's Consistency Review recommendations.   *See* ECF No. 10-5, Ex. H at 2-5 ("Protesting Party Index Table").   Plaintiffs nowhere have alleged that the Governor submitted protests on the Missoula or Lewistown proposed RMPs.

Department's regulations and BLM's internal Manuals make clear that delegations of authority are generally permissible.  *See* attached Declaration of Michael D. Nedd ¶¶ 4-6.

When a statute or regulation vests authority in one official to take an action, and this authority may *not* be redelegated, the statute or regulation states that limitation expressly.  For example, the Secretary has the authority to "make, modify, extend, or revoke withdrawals" of land under 43 U.S.C. § 1714.  Yet Congress expressly limited the range of officials who, beyond the Secretary, can perform this function: "The Secretary may delegate this withdrawal authority *only* to individuals in the Office of the Secretary who have been appointed by the President, by and with the advice and consent of the Senate."  43 U.S.C. § 1714(a) (emphasis added).  Thus, while the Secretary could delegate land-withdrawal authority to a person in his "Office" who was appointed by the President with Senate confirmation, that person could not then redelegate that authority to an official lacking those qualifications.  Likewise, certain Interior regulations expressly prohibit redelegations of authority.  *See, e.g.*, 43 C.F.R. § 3191.2(b) ("Authority delegated to a State under this subpart shall not be redelegated."); *id.* § 20.202(b)(1) (designated Ethics Counsel's authority to "[o]rder disciplinary or remedial action . . . may not be redelegated").

By contrast, when a statute or regulation is silent, as is 43 C.F.R. § 1610.5-2, delegation of the authority in question is permissible.  *See, e.g.*, *Loma Linda Univ. v. Schweiker*, 705 F.2d 1123, 1128 (9th Cir. 1983) ("Express statutory authority for delegation is not required, and Congress did not specifically prohibit delegation under

6

this statute."); *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) ("[S]ubdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent."); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389, 420 (D. Conn. 2008), *aff'd*, 587 F.3d 132 (2d Cir. 2009).

Plaintiffs rightly do not contend that Congress has left it to the BLM Director alone to respond to RMP protests. And courts assess the delegation of authority prescribed by regulation under the same standard applicable to statutes: when "[t]he plain text of the regulation does not reveal any affirmative language precluding delegation, such as 'may only be delegated to,' 'may not [be] delegate[d],' 'may not be redelegated,' 'shall not be redelegated,' or is 'not subject to delegation,'" the same presumption attaches. *Stand Up for California! v. U.S. Dep't of Interior*, 298 F. Supp. 3d 136, 143 (D.D.C. 2018).

Here, 43 C.F.R. § 1610.5-2 is "devoid of any similar language prohibiting the delegation" of the duty to decide RMP protests. *Id.* The regulation simply provides that "[t]he Director shall promptly render a decision on the protest" without any indication that the Director alone must do so. The bare instruction that the Director "shall" render a decision does not suggest that the function could not be permissibly assigned to another official. Indeed, the inclusion of express provisions prohibiting delegation in Interior regulations like 43 C.F.R. §§ 20.202 and 3191.2, and the omission of any similar language in 43 C.F.R. § 1610.5-2, makes particularly clear that the duties in the latter provision can be delegated. It is in this sense no different from an Interior

regulation recently found by another district court to be delegable.   *Id.* at 142 (25 C.F.R.
§ 151.12(c) permits delegation of duty conferred by regulation on "Secretary or
Assistant Secretary").

The ability to delegate protest decisions to an official other than the Director
likewise finds support in longstanding BLM practice.   For at least 15 years, BLM has
routinely delegated the authority to resolve protests under § 1610.5-2 to officials other
than the Director.   St. George Decl. ¶¶ 10, 12.   Indeed, of 106 RMP decisions issued
between 2009 and July 28, 2019 involving protest responses, 88 were decided by a BLM
official other than the Director or Acting Director.   *See id.* ¶ 12.   And since July 29,
2019—when Mr. Pendley began exercising the Director's delegated authority—it was
the BLM Assistant Director, not Mr. Pendley, who resolved the protests on all 27
protested RMP decisions.   *Id.* ¶ 13 & Ex. C.

This practice also finds confirmation in BLM's Manual, which contains
subregulatory provisions governing BLM.   Going back at least to 2009, the Manual has
provided that, subject to exceptions not relevant here, authorities held by the Director
may be exercised by other officials within their areas of functional jurisdiction.   *See* St.
George Decl. ¶¶ 5-6, Ex. A ("2016 Manual 1203") & B ("2009 Manual 1203"); Nedd
Decl. ¶ 6.   It further provides that, unless "qualified, limited, restricted, or withheld, all
of the authorities of the Director, BLM, to exercise the program authority of the
Secretary of the Interior are hereby delegated to the individual BLM official(s) specified
in Appendix."   2016 Manual 1203 at 5-1.   The Appendix, in turn, expressly provides
that the authority to "[r]ender decisions on protests to plan or amendment approvals"

8

may be exercised by either a BLM Deputy Director or the BLM Assistant Director.   St. George Decl. ¶ 10; 2016 Manual 1203, App.6 at A6-25.

BLM's protest responses for the Missoula and Lewistown RMPs neither involved Mr. Pendley nor varied from BLM's historical practice or its Manual.   They were performed by Mr. St. George under the delegations described above, a fact confirmed by his signature on the face of the protest resolution letters.   *See* Kaster Decl. ¶¶ 15-16; St. George Decl. ¶ 18, Exs. D & E.   And in resolving the protests, Mr. St. George exchanged no communication with and received no input from Mr. Pendley.[2]   St. George Decl. ¶ 18.

*       *       *

In sum, because the record shows that Mr. Pendley took neither of the actions on the Missoula or Lewistown RMPs the Court believed him to have taken—reviewing the Governor's recommendations and resolving public protests—there is no act that could serve as a basis to set aside those RMPs.   The Court should decline to do so.[3]

---

[2] Although the Federal Register notices announcing the availability of the Lewistown RMP did state that "[a]ll protests have been resolved and/or dismissed by the BLM Director," 85 Fed. Reg. 47,239 (Aug. 4, 2020), that language should not be read to suggest something at odds with what actually occurred.   *See also* 85 Fed. Reg. 47,238 (Aug. 4, 2020) (Missoula RMP).   Such references to "the BLM Director" are not intended to refer to Mr. Pendley or any other specific individual, but rather to track the text of 43 C.F.R. § 1610.5-2.   *See* St. George Decl. ¶ 14.

[3] The summary judgment record shows that approval of the RMPs themselves was also not a function performed by Mr. Pendley.   Rather, the Records of Decision were signed by Casey Hammond.   *See* Kaster Decl. ¶ 16; ECF No. 10-5 at 72, 392. Plaintiffs have not tried to dispute this, and no remedy should issue setting aside the RMPs on grounds that they were approved by Mr. Pendley.

**B.     Defendants are aware of no acts by Mr. Pendley that should be set aside under 5 U.S.C. § 3348(d)(1) and 5 U.S.C. § 706(2)(A).**

The Court's Order "recognize[d] that any 'function or duty' of the BLM Director that has been performed by Pendley would have no force and effect and must be set aside as arbitrary and capricious."   Order at 33 (citing 5 U.S.C. §§ 3348(d), 706(2)(A)). The Court thus directed Defendants to identify, beyond the RMPs, "any other BLM Director exclusive functions or duties that Pendley may have performed."   *Id.* at 34. Defendants have identified no actions taken by Mr. Pendley during the period he was exercising the delegated authority of the BLM Director that meet these criteria: Mr. Pendley has not taken any "action" in the performance of a "function or duty" of the BLM Director, as defined in 5 U.S.C. § 3348(a)(1) and (2).

As the Court observed, § 3348 generally prescribes the consequences for certain actions taken by a person not properly acting under applicable FVRA provisions. Order at 20 (citing § 3348(d)).   Section 3348(d) provides that an "[a]n action taken by any person" not properly acting under the FVRA provisions "in the performance of any function or duty of a vacant office . . . shall have no force or effect," and that such an action "may not be ratified."   5 U.S.C. § 3348(d)(1), (2).   But as the Court also observed, *see* Order at 20, the FVRA's definition of "function or duty" is "any function or duty of the applicable office that . . . is established by statute" or "regulation" and that "is *required* by statute" or "regulation" "to be performed by the applicable officer *(and only that officer)*."   5 U.S.C. § 3348(a)(2) (emphasis added).   This definition does not encompass functions or duties, like the resolution of protests in 43 C.F.R. § 1610.5-2,

10

that may be delegated to officials other than the one named in the statute or regulation. As the D.C. Circuit has observed, the remedial provisions of § 3348(d) address "only" nondelegable duties.   *Guedes v. ATF*, 920 F.3d 1, 12 (D.C. Cir. 2019).

That § 3348's narrow definition covers "only" nondelegable duties, *id.*, is confirmed by the FVRA's legislative history.   The Senate Report on an earlier version of the bill, addressing a "function or duty" definition materially identical to that of § 3348(a)(2), explains that "[t]he functions or duties of the office" are "defined as the non-delegable functions or duties of the officer."   S. Rep. No. 105-250 at 18 (1988); *see id.* at 27 (proposed text).   This restrictive definition ensures that, even in the absence of a properly serving acting official, "[d]elegable functions of the office could still be performed by other officers or employees," so that "[a]ll the normal functions of government thus could still be performed."   *Id.* at 18; *accord id.* at 31 (stating, among views of supporting Senators, that § 3348 should "not cause an unintended shutdown of the Federal agency within which the vacancy exists due to administrative paralysis"); *id.* at 36 (views of opposing Senators).

Defendants have determined that no acts by Mr. Pendley could have constituted the "performance of any function or duty" as defined in § 3348 of the FVRA.   5 U.S.C. § 3348(a)(2), (d)(1).   Nedd Decl. ¶¶ 7-8, 10.   That should be no surprise: as the Court observed, the Secretary's delegation orders under which Pendley exercised the Director's authority "'cover[ed] only those functions or duties that are not required by statute or regulation to be performed only by the Senate-confirmed official occupying the position.'"   Order at 23 (quoting Secretary Order No. 3345, Amendment 28, Ex.

C to Kaster Decl.).   A review of the statutes and regulations that identify functions or duties to be performed by the BLM Director identified none that qualify as an exclusive "function or duty" under § 3348(a).   Nedd Decl. ¶ 8; *cf. Guidance on the Application of the Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 72 (1999) (recognizing that "[m]ost, and in many cases all, the responsibilities performed by a PAS officer will not be exclusive, and the Act permits non-exclusive responsibilities to be delegated to other appropriate officers and employees in the agency").

This Court should not invalidate any of Mr. Pendley's acts.   Two district court decisions addressing the performance of a vacant office's duties by delegation reinforce that conclusion.   In April 2015, the FVRA's prescribed period for Vanita Gupta to serve as the Acting Assistant Attorney General ("AAG") of DOJ's Civil Rights Division expired.   Ms. Gupta, however, continued to exercise the AAG's functions as Principal Deputy Assistant Attorney General ("PDAAG") until January 2017.   When certain actions by the PDAAG were challenged in litigation as invalid under § 3348(d) of the FVRA—mirroring the question the Court has posed about Mr. Pendley's service— those challenges were rejected.   *See United States v. Harris County*, 2017 WL 7692396, at *3 n.5 (S.D. Tex. Apr. 26, 2017) (noting that "the relevant duties of the PDAAG [*read*: AAG] are delegable, and, therefore, Ms. Gupta['s] actions in this case were not barred by the [FVRA]"); *United States v. Village of Tinley Park*, 16-cv-10848, ECF No. 55 (N.D. Ill. July 17, 2017) (concluding that PDAAG permissibly performed delegable duties of AAG), attached as Attachment 1.   This Court should reach the same result—no invalidation of prior actions by an individual serving in a delegated capacity.

12

Because Mr. Pendley took no actions falling within the scope of a "function or duty" under § 3348(d), there is no action that "ha[s] no force and effect" under the FVRA, and thus none for the Court to "set aside" under 5 U.S.C. § 3348(d)(1) and 5 U.S.C. § 706(2)(A).

## II.   THE COURT'S REMEDIAL POWER IS LIMITED TO PLAINTIFFS' INJURIES-IN-FACT, OF WHICH THERE ARE NONE.

If the Court were to disagree with Defendants, and to identify acts performed by Mr. Pendley that it deems subject to potential invalidation under 5 U.S.C. § 3348(d)(1) and 5 U.S.C. § 706(2)(A), the Court would need first to determine what *jurisdictional* authority it has to do so.   The Court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," and any remedy "must be tailored to redress *the plaintiff's* particular injury."   *Gill v. Whitford*, 138 S. Ct. at 1933-34 (emphasis added).   And as described above, notwithstanding the Court's prior conclusion that Plaintiffs have standing, that conclusion was, respectfully, based on a misapprehension of certain facts, and that evaluation of the record bears critically on the scope of the Court's remedial authority.   *See United States v. City of Twin Falls*, 806 F.2d 862, 868 (9th Cir. 1986) (citing district court's "responsibility to reevaluate its jurisdiction throughout the pendency of the litigation") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1966)), *overruled on other grounds Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541, 551-52 (9th Cir. 1992); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010) ("[P]arty asserting federal jurisdiction bears the burden of establishing [the standing] requirements at every stage of the litigation.").

13

Article III restricts the Court's jurisdiction to the case or controversy before it, and the Court's remedial power is limited to redressing "the plaintiff's particular injury." *Gill*, 138 S. Ct. at 1934; *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." (citation omitted)); *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128 (9th Cir. 2005) ("It is an inexorable command of the United States Constitution that the federal courts confine themselves to deciding actual cases and controversies."). Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), and represents "a fundamental limitation on a federal court's authority to exercise jurisdiction," *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n.*, 457 F.3d 941, 949 (9th Cir. 2006).

Even after a plaintiff has successfully invoked a court's jurisdiction by showing injury-in-fact, jurisdiction remains limited to redressing the plaintiff's injury. *See Gill*, 138, S. Ct. at 1934 ("[S]tanding is not dispensed in gross; A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." (quotation omitted)). If Plaintiffs here have standing, it is rooted solely in *their own* claimed injuries, and the Court's jurisdiction does not expand to redressing *other* harms that *other* parties might allege. It is a "fundamental restriction on [the court's] authority" that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (citation omitted). The injury-in-fact requirement "would hardly serve [its] purpose . . . if once

14

a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy all inadequacies in the administration." *Lewis*, 518 U.S. at 357. The Court's jurisdiction here is thus limited to redressing the injuries-in-fact asserted and established by Plaintiffs. *See Or. Prescription Drug Monitoring Program v. U.S. DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) ("In other words, Article III requires a plaintiff [to] demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (quotation omitted)).

Plaintiffs' Complaint alleges only three injuries, the second and third of which the Court accepted: (1) a possible sage grouse listing under the Endangered Species Act, *see* Compl. ¶¶ 36-64, ECF No. 1; (2) changes to the Missoula RMP allegedly approved by Mr. Pendley, *see id.* ¶¶ 65-76; and (3) similar changes allegedly made to the Lewiston RMP by Mr. Pendley, *id; see also* Defs.' Opp'n to Mot. for Summ. J., ECF No. 17 at 9-15 ("Opp'n"). If this Court were to address these alleged harms, it would be at the outermost limits of its jurisdiction. *See Gill*, 138 S. Ct. at 1934; *Cuno*, 547 U.S. at 352-53; *Lewis*, 518 U.S. at 357.

But even within those outer bounds, the Court should not set aside any acts of Mr. Pendley because Plaintiffs have identified no cognizable injury-in-fact to remedy that is supported by the record. The Court did not find standing as to Plaintiffs' sage grouse management claims, which challenge no particular past act by Mr. Pendley and instead rely on speculation that the Fish & Wildlife Service might list the sage grouse as an endangered species in the *future*. *See* Order at 8-9.

And while it did find standing as to the RMPs, *see id.* at 12-15, the Court's opinion does not address the facts that Governor Bullock never exercised his right to have the BLM Director review his Consistency Review recommendations for the Missoula and Lewistown RMPs, that the Governor (and his co-Plaintiff) filed no protests on either RMP, and that Mr. Pendley took no action as to the RMPs in any event. Instead, as explained above, different BLM officials resolved all aspects of the RMP decisions under preexisting delegations of authority. Plaintiffs' Complaint thus identifies no injury attributable to Mr. Pendley warranting remedy.[4]

Even if there were acts by Mr. Pendley subject to invalidation, the Court's reliance on recent cases addressing acting service reinforces the narrow remedial authority it possesses. In *Casa de Maryland, Inc. v. Wolf*, the court neither enjoined Mr. Wolf's service as acting Secretary of Homeland Security nor invalidated actions taken by him unrelated to the plaintiffs' claims. Rather, it "preliminarily enjoin[ed] Defendants from enforcing a subset of the [challenged] rule changes *as applied to the*

---

[4] Whether or not the procedural right to appeal to the BLM Director under Consistency Review ordinarily provides a basis for standing, it cannot do so here, where Governor Bullock never exercised that right. *See Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008) ("Plaintiffs alleging procedural injury 'must show only that they have a procedural right that, *if exercised*, could protect their concrete interests.'" (quoting *Defs. of Wildlife v. U.S. EPA*, 420 F.3d 946, 957 (9th Cir. 2005) (emphasis added))); *Knapp v. Miller*, 863 F. Supp. 1221, 1226 (D. Nev. 1994) (state employee lacked standing to challenge employee regulation where "he failed to seek approval from the Director" of his department and "the Director never had the occasion to approve or deny a request"). Any causal connection between a putative act by Mr. Pendley and Plaintiffs' claimed injury was broken here when the Governor failed to exercise the procedural right ostensibly giving rise to a procedural injury.

*individual members of Plaintiffs.*"   *Casa de Maryland, Inc. v. Wolf*, No. 8:20-CV-02118-PX, 2020 WL 5500165, at *1 (D. Md. Sept. 11, 2020) (emphasis added).   Likewise, in *L.M.-M. v. Cuccinelli*, the court "set aside" the *specific* policies challenged by the plaintiffs.   *See* 442 F. Supp. 3d 1, 37 (D.D.C. 2020) (setting aside only "reduced-time-to-consult" and "prohibition-on-extensions" directives challenged by plaintiffs).   Neither court purported to remedy harms beyond the scope of the complaint before it.   Nor could they have.   "[C]ourts are essentially passive instruments of government" that should not "sally forth" looking for wrongs to right.   *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quotation omitted).[5]

The Court's conclusion that Mr. Pendley improperly served as Acting Director of BLM does not open the door to providing relief beyond the scope of Plaintiff's alleged harms.   *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.").   Plaintiffs have not attempted to allege a "personal stake" in any action taken by Mr. Pendley beyond those related to the sage grouse and the Missoula and Lewistown RMPs, and *certainly* no actions outside of Montana.   *Cf.* Pls.' Mot. for Summ. J. at 21, ECF No. 10-1 (Plaintiffs

---

[5]   To support standing, Plaintiffs relied on recent Supreme Court cases concluding that various officials were serving unconstitutionally.   *See* Reply at 2-8, ECF No. 23 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513 (2010); *NLRB v. Noel Canning*, 573 U.S. 513, 550 (2014); *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 937-38 (2017); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196, 2211 (2020).   In none of these cases did the Court specifically void any acts taken by these officials, save those directly challenged by the plaintiffs.

requesting that court "enjoin [Pendley] from taking any further action *over Montana*" (emphasis added)).   There is accordingly no jurisdiction to address other acts.   *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013).

## CONCLUSION

There are no acts taken by Mr. Pendley while exercising the duties of BLM Director that should be set aside under 5 U.S.C. § 3348(d) and 5 U.S.C. § 706(2)(A).


DATED this 5th day of October, 2020.



JEFFREY B. CLARK
Acting Assistant Attorney General

KURT G. ALME
United States Attorney

MARK STEGER SMITH
Assistant U.S. Attorney

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

*/s/ M. Andrew Zee*
M. ANDREW ZEE (CA Bar No. 272510)
CHRISTOPHER D. DODGE
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Avenue
San Francisco, CA 94102

Phone: (415) 436-6646
E-mail: m.andrew.zee@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2020, a copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief contains 4,954 words, excluding the caption, certificate of compliance, table of contents and authorities, certificate of service.

*/s/ M. Andrew Zee*
M. ANDREW ZEE