IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

|  |  |
|---|---|
| STEVE BULLOCK, in his official capacity as Governor of Montana; *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> BUREAU OF LAND MANAGEMENT; *et al.*, <br><br> Defendants. | Case No. 4:20-cv-00062-BMM <br><br> **DECLARATION OF BRIAN ST. GEORGE** |

I, Brian St. George, declare as follows:

1. I am currently the Bureau of Land Management's (BLM) Deputy Assistant Director for Resources and Planning.

2. Prior to becoming the Deputy Assistant Director for Resources and Planning, I served as the BLM-Colorado Deputy State Director for Resources from October 2014 to August 10, 2020. During that period, I also served on a detail from September 15, 2019 to December 31, 2019 as the as the Acting Deputy Assistant Director for Resources and Planning, and on a detail from February 16, 2020 to August 10, 2020 as the Acting Assistant Director for Resources and Planning. I was serving as the Acting Assistant Director for Resources and Planning at the time the Lewistown and Missoula Resource Management Plan protests were resolved and the plans adopted.

1

3.      I make this declaration based on information personally known by me and information provided to me by personnel in the BLM in the course of their official duties.

4.      Section 202 of the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1712, directs the Secretary of the Interior to "develop, maintain, and, when appropriate, revise land use plans which provide by tracts or areas for the use of public lands."  The Secretary has delegated that authority to the BLM.  The BLM's planning process for developing those land use plans (also called Resource Management Plans) is described generally in 43 C.F.R. subpart 1600 and the BLM's Land Use Planning Handbook, H-1601-1 (Mar. 11, 2005).[1]

5.      In general, consistent with principles of administrative law, the BLM – like other Bureaus in the Department of the Interior – derives its authority via delegation from the Secretary.  That authority is delegated down from the Secretary of the Interior, through the Assistant Secretaries, to Bureau heads, and finally to various officers within the Bureaus.  The BLM Director's authority to take various actions is delegated to subordinate officials, including actions relating to land use planning, in internal BLM Manual Section 1203, a true and correct copy of which is attached hereto

---

[1] A true and correct copy of the handbook is available at https://www.ntc.blm.gov/krc/uploads/360/4_BLM%20Planning%20Handbook%20H-1601-1.pdf

as Exhibit A. The current version of Manual Section 1203 has been in effect since 2016.

6. A true and correct copy of the prior version of Manual Section 1203, which was in effect from 2009-2016, is attached hereto as Exhibit B.

## Land Use Planning and Administrative Appeals

7. The BLM Land Use Planning Handbook describes the BLM's planning process in detail. That process is outlined in the following flowchart on page 17:



Figure 1.—EIS-level planning efforts: Required steps for new plans, revisions, and amendments

3

8. As noted in that flowchart, after opportunities for public input, including public comment on a draft RMP/EIS, the BLM prepares a Proposed Plan/FEIS. Following the BLM's issuance of a Proposed Plan/FEIS, there are then two separate opportunities for affected persons to provide input on the Proposed RMP/FEIS and have that input considered by the BLM: (1) protests by the public, and (2) consistency review for Governors of an affected state.

9. Protests are governed by 43 C.F.R. § 1610.5-2(a). That regulation provides the opportunity for "any person who participated in the planning process and has an interest which may be adversely affected by the approval or amendment" to protest the approval of a plan within 30 days of the notice of receipt of the FEIS filed by the Environmental Protection Agency in the Federal Register. That regulation further provides that "[t]he Director shall promptly render the decision on the protest." *Id.* § 1610.5-2(a)(3).

10. Although the regulation provides that "the Director" shall promptly render a decision, it does not prohibit a re-delegation of that authority, and the BLM has long interpreted 43 C.F.R. § 1610.5-2 to allow for re-delegation of that authority to BLM officials other than the Director. Under the BLM's currently operative delegations, the protest decision authority is delegated to the Deputy Directors and the Assistant Director for Resources and Planning. The internal BLM documents that effectuate those delegations may be viewed in Exhibit B (BLM Manual 1203 (2009), Appendix 1, page 37, Subject Code 1601 (Delegating the Director's authority to "render

4

decisions on protests to plan or amendment approvals" to the Deputy Director and the Assistant Director));[2] and Exhibit A (BLM Manual 1203 (2016), Appendix 6, page A6-25, Subject Code 1601 (same)). *See also* BLM Land Use Planning Handbook, Appendix E, page 1 ("The Director has delegated signing of response letters to protests to the Assistant Director, Renewable Resources and Planning (AD-200).").

11. Separate from the protest process, 43 C.F.R. § 1610.3-2(e) permits the Governor of an affected state to identify inconsistences between a proposed BLM plan and State or local plans, policies, or programs, and to provide written recommendations to the State Director. If BLM responds to the Governor's recommendations with an adverse decision, the Governor is provided the opportunity to appeal that adverse decision by the State Director to the "Director of the Bureau of Land Management." 43 C.F.R. § 1610.3-2(e).

12. In my experience, the Director rarely resolves protests on proposed RMPs; rather, that task is typically performed by the Assistant Director for Resources and Planning, or, less often, a Deputy Director. I reviewed the available records related to BLM RMP decisions between fiscal year 2009 and July 28, 2019. I was able to identify 106 RMP decisions that included a protest response, and in 88 of those, an

---

[2] An "X" in the relevant column indicates the official(s) to whom the authority in question is delegated. "DD" stands for "Deputy Director" and "AD" stands for "Assistant Director".

official other than the Director or Acting Director resolved the protests.[3] And of those 88, the Assistant Director for Resources and Planning resolved 68.[4]

13. More recently, since July 29, 2019, when William Perry Pendley first began exercising the delegated authority of the BLM Director, the Assistant Director for Resources and Planning has resolved the protests for all 27 RMP decisions that included a protest response. *See* Exhibit C. While serving as Acting Assistant Director for Resources and Planning, I personally resolved the protests for seven of them, including the Missoula and Lewistown RMP protests as described below in paragraphs 17-19. *Id.*

14. Often, the Federal Register Notices announcing these approved RMP decisions identified "the Director" or "the BLM Director" as the official that resolved protests. However, in all of those cases, the protests were resolved by the Assistant Director for Resources and Planning.[5] References to "the Director" or "the BLM Director" are intended to track the language of 43 C.F.R. § 1610.5-2, and not to refer

---

[3] Indeed, the protests on the RMP decisions that comprised the 2015 Greater Sage-grouse planning effort, which were the subject of a ruling of this court in *Montana Wildlife Federation v. Bernhardt*, No CV-18-69-GF-BMM (May 22, 2020) were all resolved by the Deputy Director for Operations, not the Director.

[4] From March 1, 2013 to April 8, 2014, Neil Kornze served under a delegation order similar to the one at issue in this litigation. While Mr. Kornze was exercising this authority, BLM executed at least 10 RMP decisions, which included resolution of the associated RMP protests.

[5] *See, e.g.*, 84 Fed. Reg. 10327 (March 20, 2019), 85 Fed. Reg. 8606 (February 14, 2020), 85 Fed. Reg. 20296 (April 10, 2020), 85 Fed. Reg. 45225 (July 21, 2020), 85 Fed. Reg. 47239 (August 4, 2020).

to Mr. Pendley, or any other individual, specifically. Other Federal Register Notices, like those for the Bears Ears National Monument and Grand Staircase-Escalante National Monument Records of Decision, did not identify the official that resolved the protests.[6] These Notices clearly explained, however, that for these decisions, "[r]esolution of protests is delegated to the BLM Assistant Director for Resources and Planning on behalf of the Director of the BLM, whose decision on the protest is the final decision of the U.S. Department of the Interior."[7]

15. The BLM's Land Use Planning Handbook describes the BLM's protest resolution process in detail. Appendix E, pages 1-14. In general, during the protest resolution process, the BLM Headquarters protest coordinator, the individual the public is directed to mail protest letters to and who coordinates the internal resolution of protests for Headquarters, initially reviews all protests to ensure they are timely filed and complete, then works with the appropriate BLM State and Field Office staff to determine if a party has standing to protest, and whether issues are germane to planning

---

[6] Mr. Pendley had no involvement in either national monument planning effort.
[7] See Bears Ears National Monument: Record of Decision and Approved Monument Management Plans Indian Creek and Shash Jáa Units, p. 23, (February 2020), available at https://eplanning.blm.gov/public_projects/lup/94460/20012455/250017011/BLM_ROD_and_Approved_MMPs_for_the_Indian_Creek_and_Shash_Jaa_Units_of_BENM_February2020.pdf; Record of Decision and Approved Resource Management Plans for the Grand Staircase-Escalante National Monument, 23, (February 2020), available at https://eplanning.blm.gov/public_projects/lup/94706/20012470/250017029/GSENM_ROD_and_ARMPs_February2020.pdf.

and were previously raised during the planning process. Next, the State Office prepares draft protest responses to protest issues identified by the Headquarters protest coordinator. Once these draft responses are independently evaluated by the Headquarters protest coordinator and appropriate program staff, they are used to prepare a draft report that includes recommended protest responses and a recommendation whether to uphold the plan, remand the plan, or remand the plan in part to the State Director for further action. The report, recommendations, and protest response letters are then presented to the Assistant Director who reviews and either signs a letter to each protesting party dismissing their protest or remands specific protest issues to the State Director to address deficiencies. Like all other planning documents, the drafts of the Federal Register Notices announcing the availability of Records of Decision for plans as well as the Records of Decisions themselves are prepared by the relevant BLM State Office.

16. In contrast to the protest resolution process, in my experience decisions on a Governor's appeal from the consistency review process are resolved by the BLM Director or an individual acting in that position.

## The Missoula and Lewistown RMPs

17. The BLM received approximately 65 protests on the Missoula Proposed RMP/FEIS during the 30-day protest period; it received approximately 150 on the Lewistown Proposed RMP/FEIS.

18. Following the general process described above, as the Assistant Director, I worked with my staff to resolve those protests. On June 9, 2020, I resolved the Lewistown Proposed RMP Protests. A true and correct copy of the memorandum memorializing those decisions is attached as Exhibit D. On June 19, 2020, I resolved the Missoula Proposed RMP protests. A true and correct copy of the letters memorializing those decisions is attached as Exhibit E.

19. I never discussed my resolution of those protests with Mr. Pendley, and he had no input into my resolution of them. In fact, I have never had any communication with Mr. Pendley about either the Lewistown or the Missoula planning effort.

20. The BLM did not receive a protest from either Plaintiff in this case on either the Lewistown or Missoula Proposed RMP.[8] The BLM did receive two consistency review letters from the Governor, one for each RMP, addressed to the BLM Montana State Director and dated April 13, 2020. True and correct copies of those letters are attached as Exhibits F and G.

21. The BLM-Montana State Director responded in a letter dated April 30, 2020. A true and correct copy of that letter is attached as Exhibit H. On page 7, the

---

[8] The BLM did receive a protest on the Lewistown Proposed RMP from the Montana Department of Fish, Wildlife, and Parks, which I resolved as part of the process described above. That protest raised an issue (firearms restrictions) not raised by either plaintiff in this litigation.

letter specifically advises the Governor of his right to appeal to the BLM Director, in writing, within 30 days pursuant to 43 C.F.R. § 1610.3-2(e).

22.     The BLM did not receive any such appeal from the Governor as to either RMP.

23.     As is the usual process, the BLM-Montana State Office prepared drafts of the documents for both the Lewistown and Missoula planning efforts – including the Records of Decision and corresponding Federal Register Notices – and submitted them to BLM Headquarters and the Department for review.  As originally drafted, the Federal Register notices described protests on these RMPs as having been resolved by "the Director," and this language was not altered, amended, or changed throughout the review process, and appears as originally drafted in the final Federal Register notices.

### Other Regulations Mentioning the Director

24.     In addition to the protest regulation at 43 § C.F.R. 1610.5-2(a)(3), there are several other examples where the "BLM Director" is specifically identified in a regulation as having authority to take a particular action, but where BLM has similarly delegated the authority to a lower level within BLM.    For example:

    a.     43 C.F.R. § 2650.4-7(a)(9)-(a)(13) provides that for Alaska Native Selections the BLM Director reviews identified easement needs, tentatively determines which easements shall be reserved, issues a notice of proposed easements, receives comments, prepares and then issues a decision to issue conveyance.   The BLM Manual Section 1203, Appendix 9 delegates the

authority to "determine, reserve and terminate easements" and "issue decisions and conveyances" to the BLM's Assistant Director and to the BLM's State Director. *See* Exhibit A, Appendix 9, page A9-37.

      b.      43 C.F.R. § 2932.31(a) provides that the BLM Director establishes fees, including minimum annual fees, for Special Recreation Permits for commercial activities, organized group activities or events, and competitive events. The BLM Manual Section 1203, Appendix 9 delegates the authority to "[e]stablish fees, including minimum and annual fees, for special recreation permits for commercial activities, organized group activities, and competitive events" to a BLM Deputy Director. *See* Exhibit A, Appendix 9, page A9-39.

      c.      43 C.F.R. § 4750.4-2(c)(1) provides that the BLM Director may reduce or waive the fee when wild horses or burros are un-adoptable at the base adoption fee. The BLM Manual Section 1203, Appendix 14 delegates the authority to waive the adoption fees for otherwise unadoptable animals to a BLM Deputy Director. *See* Exhibit A, Appendix 14, page A14-50.

      d.      43 C.F.R. § 4770.4 provides that the BLM Director may authorize an employee who witnesses a violation of the Wild Horse and Burro Act or these regulations to arrest without warrant any person committing the violation. The BLM Manual Section 1203, Appendix 14 delegates this authority to the BLM State Director. *See* Exhibit A, Appendix 14, page A14-51.

  e. 43 C.F.R. § 2200.0-4 identifies the Director of the Bureau of Land Management as the official with responsibility of carrying out the functions of the Secretary of the Interior for land exchanges. The BLM Manual Section 1203, Appendix 9 delegates the authority to "[a]pprove all actions, subject to the title opinion of the District/Field or Regional Solicitor, in all matters relating to exchange of lands and issuing conveyance documents under the FLPMA or other authority" to the BLM State Director and District Manager for the respective State. *See* Exhibit A, Appendix 9, page A9- 35.

25. There is also a similar example where the BLM Director is specifically identified for action in a statute, but where the BLM has delegated the authority to a lower level within the BLM. Specifically, 16 U.S.C. § 6591c(b) authorizes the BLM Director, via agreement or contract as appropriate, to enter into stewardship contracting projects with private persons or other public or private entities to perform services to achieve land management goals for the national forests and the public lands that meet local and rural community needs. The BLM Manual Section 1203, Appendix 15, delegates the authority to "approve stewardship projects" to BLM Field Managers, after "state office stewardship coordinator review." *See* Exhibit A, Appendix 15, page A15-53.

I declare under penalty of perjury, pursuant to 28 U.S.C. 1746, that the foregoing is true and correct.

Executed on October __5__, 2020.

_____
Brian St. George
Deputy Assistant Director–Resources and Planning
Bureau of Land Management