# **<u>Exhibit A</u>**

**"BLM Director" Duties or Functions Under Statute[1]:**

1. **Federal Land Policy and Management Act**

**43 U.S.C. §1731(a), Director; appointment, qualifications, functions, and duties (" **The Bureau of Land Management established by Reorganization Plan Numbered 3, of 1946 shall have as its head a Director. Appointments to the position of Director shall hereafter be made by the President, by and with the advice and consent of the Senate. The Director of the Bureau shall have a broad background and substantial experience in public land and natural resource management. He shall carry out such functions and shall perform such duties as the Secretary may prescribe with respect to the management of lands and resources under his jurisdiction according to the applicable provisions of this Act and any other applicable law.")

**43 US.C. § 1721(a)-(b), Conveyances of public lands to States, local governments, etc.**
((a)"The Secretary is authorized to convey to States or their political subdivisions under the Recreation and Public Purposes Act (44 Stat. 741 as amended; 43 U.S.C. § 869 et seq.), as amended, but without regard to the acreage limitations contained therein, unsurveyed islands determined by the Secretary to be public lands of the United States. The conveyance of any such island may be made without survey: *Provided, however*, That such island may be surveyed at the request of the applicant State or its political subdivision if such State or subdivision donates money or services to the Secretary for such survey, the Secretary accepts such money or services, and such services are conducted pursuant to criteria established by the Director of the Bureau of Land Management. Any such island so surveyed shall not be conveyed without approval of such survey by the Secretary prior to the conveyance."); ((b)(1) "The Secretary is authorized to convey to States and their political subdivisions under the Recreation and Public Purposes Act [43 U.S.C. §A. §§ 869 to 869-4], but without regard to the acreage limitations contained therein, lands other than islands determined by him after survey to be public lands of the United States erroneously or fraudulently omitted from the original surveys (hereinafter referred to as "omitted lands"). Any such conveyance shall not be made without a survey: *Provided,* That the prospective recipient may donate money or services to the Secretary for the surveying necessary prior to conveyance if the Secretary accepts such money or services, such services are conducted pursuant to criteria established by the Director of the Bureau of Land Management, and such survey is approved by the Secretary prior to the conveyance.")

**43 US.C. § 1783(a)**, **Yaquina Head Outstanding Natural Area**, ("In order to protect the unique scenic, scientific, educational, and recreational values of certain lands in and around Yaquina Head, in Lincoln County, Oregon, there is hereby established, subject to valid existing rights, the Yaquina Head Outstanding Natural Area (hereinafter referred to as the "area"). The boundaries of the area are those shown on the map entitled "Yaquina Head Area", dated July 1979, which shall be on file and available for public inspection in the Office of the Director,

---

[1] This list was compiled by searching the current United States Code and relevant Code of Federal Regulations (CFR) sections, as well as recent Public Laws that may not have been codified, for references to the Bureau of Land Management Director.

Bureau of Land Management, United States Department of the Interior, and the State Office of the Bureau of Land Management in the State of Oregon.")

**43 U.S.C. § 1785(b)(4), (d) Fossil Forest Research Natural Area**, ((b)(4)"The map and legal description shall be on file and available for public inspection in the Office of the Director of the Bureau of Land Management, Department of the Interior."); ((d) "Not later than 3 full fiscal years after November 12, 1996, the Secretary of the Interior, acting through the Director of the Bureau of Land Management, shall develop a baseline inventory of all categories of fossil resources within the Area. After the inventory is developed, the Secretary shall conduct monitoring surveys at intervals specified in the management plan developed for the Area in accordance with subsection (e) of this section.")

**43 U.S.C. § 1786(c)(2) Piedras Blancas Historic Light Station** ("The boundaries of the Outstanding Natural Area as those shown on the map entitled "Piedras Blancas Historic Light Station: Outstanding Natural Area", dated May 5, 2004, which shall be on file and available for public inspection in the Office of the Director, Bureau of Land Management, United States Department of the Interior, and the State office of the Bureau of Land Management in the State of California.")

## 2. Public Law 111-11. Omnibus Public Land Management Act of 2009

**SEC. 1982(a)(2) Transfer of Land Into Trust For the Shivwits Band of Paiute Indians.** ("SURVEY.—Not later than 180 days after the date of enactment of this Act, the Secretary, acting through the Director of the Bureau of Land Management, shall complete a survey of Parcel A to establish the boundary of Parcel A.")

**Subtitle C—Fort Stanton-Snowy River Cave National Conservation Area; SEC. 2201(3) Definitions. ("**The term ''Secretary'' means the Secretary of the Interior, acting through the Director of the Bureau of Land Management.")

**SEC. 2603(a)(5) Nevada Cancer Institute Land Conveyance. ("**The term ''Secretary'' means the Secretary of the Interior, acting through the Director of the Bureau of Land Management).

**SEC. 2604(a)(2) Turnabout Ranch Land Conveyance, Utah. ("**MAP.—The term ''map'' means the map entitled ''Turnabout Ranch Conveyance'' dated May 12, 2006, and on file in the office of the Director of the Bureau of Land Management.")

**SEC. 2607(a) Twin Falls, Idaho, Land Conveyance. ("**CONVEYANCE.—As soon as practicable after the date of enactment of this Act, the Secretary of the Interior, acting through the Director of the Bureau of Land Management, shall convey to the city of Twin Falls, Idaho, subject to valid existing rights, without consideration, all right, title, and interest of the United States in and to the 4 parcels of land described in subsection (b).")

**SEC. 3101 (a)(1) Wildland Firefighter Safety.** ("the Secretary of the Interior, acting through the Directors of the Bureau of Land Management, the United States Fish and Wildlife Service, the National Park Service, and the Bureau of Indian Affairs")

3. **Public Law 116-9 John D. Dingell, Jr. Conservation, Management, and Recreation Act**

**SEC. 1116 (d)(1) Technical Corrections to Certain Laws Relating to Federal Land in the State of Nevada. ("**IN GENERAL.—The Secretary, acting through the Director of the Bureau of Land Management, may issue a corrective patent for the 7,548 acres of land in Lincoln County, Nevada, depicted on the map prepared by the Bureau of Land Management entitled ''Proposed Lincoln County Land Reconfiguration'' and dated January 28, 2016.")

**SEC. 1120(a)(4) Red River Gradient Boundary Survey. ("**SECRETARY.—The term ''Secretary'' means the Secretary, acting through the Director of the Bureau of Land Management.")

**SEC. 1121(c)(2)(A) San Juan County Settlement Implementation.** "IN GENERAL.—Subject to valid existing rights, the Wilderness shall be administered by the Director of the Bureau of Land Management in accordance with this subsection and the Wilderness Act (16 U.S.C. § 1131 et seq.), except that any reference in that Act to the effective date of that Act shall be considered to be a reference to the date of enactment of this Act.");

**SEC. 1121(d)(2) San Juan County Settlement Implementation.** "ADMINISTRATION.—Subject to valid existing rights, the land designated as wilderness by paragraph (1) shall be administered by the Director of the Bureau of Land Management (referred to in this subsection as the ''Director''), in accordance with—…")

**SEC. 1201(b)(11)(D)(iv)(II)(aa) Organ Mountains-Desert Peaks Conservation. ("**under the jurisdiction of the Director of the Bureau of Land Management…")

**SEC. 714(a)(6). Prohibited Uses of Acquired, Donated, and Conservation Land. ("**SECRETARY.—The term 'Secretary' means the Secretary, acting through the Director of the Bureau of Land Management.**")**

**SEC. 4105(a)(1)(A)(iii) Identifying Opportunities for Recreation, Hunting, and Fishing on Federal Land.** ("[t]he term Secretary means… the Director of the Bureau of Land Management…)

**SEC. 9001(a)(3)(A)(iii) Every Kid Outdoors Act.** ([t]he term Secretaries means… the Director of the Bureau of Land Management…")

4. **National Conservation Lands**

**16 U.S.C. § 410ii-5(e), Chaco Culture Historical Park** ("Within three complete fiscal years from December 19, 1980, the Secretary shall transmit to the Committee on Interior and Insular Affairs of the United States House of Representatives and the Committee on Energy and Natural Resources of the United States Senate, a general management plan for the identification, research, and protection of the park, pursuant to the provisions of section 100502 of title 54, to be developed by the Director, National Park Service, in consultation with the Directors, Bureau of Land Management and Bureau of Indian Affairs and the Governor, State of New Mexico, and a joint management plan for the identification, research, and protection of the archeological protection sites, to be developed by the Director, National Park Service, in consultation and concurrence with the Directors, Bureau of Land Management and Bureau of Indian Affairs, and the Governor, State of New Mexico.")

**16 U.S.C. § 460yyy, Fort Stanton-Snowy River Cave NCA.** ("The term "Secretary" means the Secretary of the Interior, acting through the Director of the Bureau of Land Management.")

**16 U.S.C. § 460ccc-2, Red Rock Canyon NCA.** ("The Secretary, acting through the Director of the Bureau of Land Management, shall, subject to valid existing rights, manage the conservation area to conserve, protect, and enhance the resources described in section 460ccc-1 of this title. . . .")

**16 U.S.C. § 460iii-3(c), Morley Nelson Snake River Birds of Prey NCA.** ("The Secretary, acting through the Director of the Bureau of Land Management, is authorized to establish . . . a visitors center.")

**16 U.S.C. § 460mmm-1, Mcinnis Canyons NCA**. ("The term "Secretary" means the Secretary of the Interior, acting through the Director of the Bureau of Land Management.")

**16 U.S.C. § 460uu-41(b), El Malpais National Monument and Conservation Area**. (" . . . the Secretary, acting through the Director of the Bureau of Land Management, shall manage the lands within the WSA so as to maintain their potential for inclusion within the National Wilderness Preservation System.")

### 5.  Stewardship Contracting

**16 U.S.C. §6591c(b), Stewardship end result contracting projects.** ("The Chief and the Director, via agreement or contract as appropriate, may enter into stewardship contracting projects with private persons or other public or private entities to perform services to achieve land management goals for the national forests and the public lands that meet local and rural community needs.")

### 6.  Survey

**18 U.S.C. § 1859, Surveys interrupted.** ("Whoever, by threats or force, interrupts, hinders, or prevents the surveying of the public lands, or of any private land claim which has been or may be

confirmed by the United States, *by the persons authorized to survey the same in conformity with the instructions of the Director of the Bureau of Land Management*, shall be fined under this title or imprisoned not more than three years, or both.")

### 7. Mineral Lands and Mining

**30 U.S.C. § 30, Adverse claims; oath of claimants; requisites; waiver; stay of land office proceedings; judicial determination of right of possession; successful claimants' filing of judgment roll, certificate of labor, and description of claim in land office, and acreage and fee payments; issuance of patents for entire or partial claims upon certification of land office proceedings and judgment roll; alienation of patent title.** (" . . . file a certified copy of the judgment roll with the register of the land office, together with the certificate of the Director of the Bureau of Land Management that the requisite amount of labor has been expended or improvements made thereon, and the description required in other cases, and shall pay to the register $5 per acre for his claim, together with the proper fees, whereupon the whole proceedings and the judgment roll shall be certified by the register to the Director of the Bureau of Land Management, and a patent shall issue thereon for the claim, or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess. If it appears from the decision of the court that several parties are entitled to separate and different portions of the claim, each party may pay for his portion of the claim, with the proper fees, and file the certificate and description by the Director of the Bureau of Land Management whereupon the register shall certify the proceedings and judgment roll to the Director of the Bureau of Land Management, as in the preceding case, and patents shall issue to the several parties according to their respective rights.")

**30 U.S.C. § 34, Description of vein claims on surveyed and unsurveyed lands; monuments on ground to govern conflicting calls** ("The description of vein or lode claims upon surveyed lands shall designate the location of the claims with reference to the lines of the public survey, but need not conform therewith; but where patents have been or shall be issued for claims upon unsurveyed lands, the Director of the Bureau of Land Management in extending the public survey, shall adjust the same to the boundaries of said patented claims so as in no case to interfere with or change the true location of such claims as they are officially established upon the ground. Where patents have issued for mineral lands, those lands only shall be segregated and shall be deemed to be patented which are bounded by the lines actually marked, defined, and established upon the ground by the monuments of the official survey upon which the patent grant is based, and the Director of the Bureau of Land Management in executing subsequent patent surveys, whether upon surveyed or unsurveyed lands, shall be governed accordingly. The said monuments shall at all times constitute the highest authority as to what land is patented, and in case of any conflict between the said monuments of such patented claims and the descriptions of said claims in the patents issued therefor the monuments on the ground shall govern, and erroneous or inconsistent descriptions or calls in the patent descriptions shall give way thereto.")

**30 U.S.C. § 39, Surveyors of mining claims.** ("The Director of the Bureau of Land Management may appoint in each land district containing mineral lands as many competent surveyors as shall apply for appointment to survey mining claims. The expenses of the survey of vein or lode claims, and the survey and subdivision of placer claims into smaller quantities than one hundred and sixty acres, together with the cost of publication of notices, shall be paid by the applicants, and they shall be at liberty to obtain the same at the most reasonable rates, and they shall also be at liberty to employ any United States deputy surveyor to make the survey. The Director of the Bureau of Land Management shall also have power to establish the maximum charges for surveys and publication of notices under sections 21, 22 to 24, 26 to 28, 29, 30, 33 to 48, 50 to 52, 71 to 76 of this title and section 661 of Title 43; and, in case of excessive charges for publication, he may designate any newspaper published in a land district where mines are situated for the publication of mining notices in such district, and fix the rates to be charged by such paper; and, to the end that the Director may be fully informed on the subject, each applicant shall file with the register a sworn statement of all charges and fees paid by such applicant for publication and surveys, together with all fees and money paid the register of the land office, which statement shall be transmitted, with the other papers in the case, to the Director of the Bureau of Land Management.")

**30 U.S.C. § 75, Conflicting claims upon coal lands; rules and regulations.** ("In case of conflicting claims upon coal lands where the improvements shall be commenced, after the third day of March, 1873, priority of possession and improvement, followed by proper filing and continued good faith, shall determine the preference right to purchase. And also where improvements have already been made prior to the third day of March, 1873, division of the land claimed may be made by legal subdivisions, to include, as near as may be, the valuable improvements of the respective parties. The Director of the Bureau of Land Management is authorized to issue all needful rules and regulations for carrying into effect the provisions of this section and sections 71 to 74 of this title.")

**30 U.S.C. § 34 Description of vein claims on surveyed and unsurveyed lands; monuments on ground to govern conflicting calls.** ("The description of vein or lode claims upon surveyed lands shall designate the location of the claims with reference to the lines of the public survey, but need not conform therewith; but where patents have been or shall be issued for claims upon unsurveyed lands, the Director of the Bureau of Land Management in extending the public survey, shall adjust the same to the boundaries of said patented claims so as in no case to interfere with or change the true location of such claims as they are officially established upon the ground. Where patents have issued for mineral lands, those lands only shall be segregated and shall be deemed to be patented which are bounded by the lines actually marked, defined, and established upon the ground by the monuments of the official survey upon which the patent grant is based, and the Director of the Bureau of Land Management in executing subsequent patent surveys, whether upon surveyed or unsurveyed lands, shall be governed accordingly. The said monuments shall at all times constitute the highest authority as to what land is patented, and in case of any conflict between the said monuments of such patented claims and the descriptions of said claims in the patents issued therefor the monuments on the ground shall govern, and erroneous or inconsistent descriptions or calls in the patent descriptions shall give way thereto.")

**30 U.S.C. § 39 Surveyors of mining claims.** ("The Director of the Bureau of Land Management may appoint in each land district containing mineral lands as many competent surveyors as shall apply for appointment to survey mining claims. The expenses of the survey of vein or lode claims, and the survey and subdivision of placer claims into smaller quantities than one hundred and sixty acres, together with the cost of publication of notices, shall be paid by the applicants, and they shall be at liberty to obtain the same at the most reasonable rates, and they shall also be at liberty to employ any United States deputy surveyor to make the survey. The Director of the Bureau of Land Management shall also have power to establish the maximum charges for surveys and publication of notices under sections 21, 22 to 24, 26 to 28, 29, 30, 33 to 48, 50 to 52, 71 to 76 of this title and section 661 of Title 43; and, in case of excessive charges for publication, he may designate any newspaper published in a land district where mines are situated for the publication of mining notices in such district, and fix the rates to be charged by such paper; and, to the end that the Director may be fully informed on the subject, each applicant shall file with the register a sworn statement of all charges and fees paid by such applicant for publication and surveys, together with all fees and money paid the register of the land office, which statement shall be transmitted, with the other papers in the case, to the Director of the Bureau of Land Management.")[2]

**30 U.S.C. § 2002 (10), Methane Hydrate Research and Development. Definitions.** ("The term "Secretary of the Interior" means the Secretary of the Interior, acting through the Director of the United States Geological Survey, *the Director of the Bureau of Land Management*, and the Director of the Minerals Management Service.")

### 8.  Oregon and California Railroad Lands

**43 U.S.C. §2606(a), Oregon and California Railroad revested lands and Coos Bay Wagon Road reconveyed lands.** ("Notwithstanding any other provision of law, with respect to the Oregon and California Railroad grant land revested in the United States by the Act of June 9, 1916 (39 Stat. 218, chapter 137), and the Coos Bay Wagon Road grant land reconveyed to the United States by the first section of the Act of February 26, 1919 (40 Stat. 1179, chapter 47), that is managed under the Act of August 28, 1937 (43 U.S.C. 2601 et seq.), the Secretary of the Interior, acting through the Director of the Bureau of Land Management, shall not be required to engage in consultation under any law (including section 7 of Public Law 93-205 (16 U.S.C. 1536) and section 402.16 of title 50, Code of Federal Regulations (or a successor regulation)), with respect to-- (1) the listing of a species as threatened or endangered, or a designation of critical habitat, pursuant to Public Law 93-205 (16 U.S.C. 1531 et seq.), if a land use plan has been adopted by the Secretary of the Interior as of the date of listing or designation; and (2) any provision of a land use plan adopted as described in paragraph (1).")

---

[2] Note that under the Departmental Manual, the Director may exercise the authority of the ASLMM to sign mineral entry final certificates and patents under the Mining Law, and the Director may not redelegate that authority. 235 DM 1.

### 9.   Recreation and Public Purposes Act

**43 U.S.C. §1721(a), Conveyances of public lands to States, local governments, etc.**
("Unsurveyed islands; authorization and limitations on authority. The Secretary is authorized to convey to States or their political subdivisions under the Recreation and Public Purposes Act (44 Stat. 741 as amended; 43 U.S.C. 869 et seq.), as amended, but without regard to the acreage limitations contained therein, unsurveyed islands determined by the Secretary to be public lands of the United States. The conveyance of any such island may be made without survey: Provided, however, That such island may be surveyed at the request of the applicant State or its political subdivision if such State or subdivision donates money or services to the Secretary for such survey, the Secretary accepts such money or services, and such services are conducted pursuant to criteria established by the Director of the Bureau of Land Management. Any such island so surveyed shall not be conveyed without approval of such survey by the Secretary prior to the conveyance.")

### 10.  Bureau of Land Management Foundation

**43 U.S.C. §1748c(c)(1)(B)(ii), Bureau of Land Management Foundation.** ("The Director of the Bureau of Land Management shall be an ex-officio, nonvoting member of the Board.")

### 11.  Helium

**50 U.S.C. § 167m(b), Definitions.** ("Not later than 90 days after October 2, 2013, to provide the market with appropriate and timely information affecting the helium resource, the Director of the Bureau of Land Management shall establish a timely and public reporting process to provide data that affects the helium industry, including-- (1) annual maintenance schedules and quarterly updates, that shall include-- (A) the date and duration of planned shutdowns of the Federal Helium Pipeline; (B) the nature of work to be undertaken on the Federal Helium System, whether routine, extended, or extraordinary; (C) the anticipated impact of the work on the helium supply; (D) the efforts being made to minimize any impact on the supply chain; and (E) any concerns regarding maintenance of the Federal Helium Pipeline, including the pressure of the pipeline or deviation from normal operation of the pipeline; (2) for each unplanned outage, a description of-- (A) the beginning of the outage; (B) the expected duration of the outage; (C) the nature of the problem; (D) the estimated impact on helium supply; (E) a plan to correct problems, including an estimate of the potential timeframe for correction and the likelihood of plan success within the timeframe; (F) efforts to minimize negative impacts on the helium supply chain; and (G) updates on repair status and the anticipated online date; (3) monthly summaries of meetings and communications between the Bureau of Land Management and the Cliffside Refiners Limited Partnership, including a list of participants and an indication of any actions taken as a result of the meetings or communications; and (4) current predictions of the lifespan of the Federal Helium System, including how much longer the crude helium supply will be

available based on current and forecasted demand and the projected maximum production capacity of the Federal Helium System for the following fiscal year.")

## BLM Director Duties or Functions Under Regulations

1. **Oil and Gas**

**43 C.F.R. § 3120.3 Nomination Process ("**The Director may elect to implement the provisions contained in §§ 3120.3–1 through 3120.3–7 of this title after review of any comments received during a period of not less than 30 days following publication in the Federal Register of notice that implementation of those sections is being considered.")

**43 C.F.R. § 3120.3-1 Competitive Leases, General** ("The Director may elect to accept nominations requiring submission of the national minimum acceptable bid, as set forth in this section, as part of the competitive process required by the act, or elect to accept informal expressions of interest. A List of Lands Available for Competitive Nominations may be posted in accordance with § 3120.4 of this title, and nominations in response to this list shall be made in accordance with instructions contained therein and on a form approved by the Director. Those parcels receiving nominations shall be included in a Notice of Competitive Lease Sale, unless the parcel is withdrawn by the Bureau.")

*Onshore Oil and Gas Operations*

**43 C.F.R. § 3160.0-2, Policy** ("The regulations in this part are administered under the direction of the Director of the Bureau of Land Management; except that as to lands within naval petroleum reserves, they shall be administered under such official as the Secretary of Energy shall designate.")

**43 C.F.R. § 3164.1(a), Onshore Oil and Gas Orders** ("The Director is authorized to issue Onshore Oil and Gas Orders when necessary to implement and supplement the regulations in this part. All orders will be published in the Federal Register both for public comment and in final form.")

*Onshore Oil and Gas Unit Agreements*

**43 C.F.R. § 3180.0-2, Policy** ("Subject to the supervisory authority of the Secretary of the Interior, the administration of the regulations in this part shall be under the jurisdiction of the authorized officer. In the exercise of his/her discretion, the authorized officer shall be subject to the direction and supervisory authority of the Director, Bureau of Land Management, who may exercise the jurisdiction of the authorized officer.")

*Delegation of Inspection and Enforcement Authority*

**43 C.F.R. § 3191.1-1, Petition ("**The Governor or other authorized official of any eligible State may request in writing that the Director delegate all or part of his/her authority and responsibility for inspection, enforcement and investigation on oil and gas leases on Federal lands within the State and on Indian lands within the State where the affected Indian tribe or Indian allottee has given written permission for such inspection, enforcement and investigation. Requests by a State

10

for delegation of other activities may be granted by the Director with the approval of the Secretary.")

**43 C.F.R. § 3191.1-3, Action Upon Petition** ("Upon request for a delegation of authority, the Director shall determine if…")

**43 C.F.R. § 3191.2(a), (h), (i), Terms of Delegation** ("(a) Delegations shall be continuing, contingent upon available funding, providing that there is an annual finding by the Director that the provisions of the delegation and the mineral leasing laws are still being carried out and that the requirements of § 3191.1–3 (a), (b) and (c)of this title are still in effect.); ("(h)The Director reserves the right to make inspections on Federal and Indian leases inspected by a State under this subpart for the purpose of evaluating the manner in which the delegation is being carried out."); ("(i) The Director reserves the right to act independently to carry out his/her responsibilities under the law.")

**43 C.F.R. § 3191.3-1(b),(c),(d),(e), Termination** ("(b)The Director may revoke a delegation if it is determined that the State has failed to meet the minimum standards for complying with the delegated authority."); ("(c) Prior to any action to revoke a delegation, the Director shall notify the State in writing of the deficiencies in the program leading to such revocation."); ("(d)Upon notification of intent to revoke a delegation, the State shall have 30 days to respond with a plan to correct the cited deficiencies. If the Director determines that the plan of correction is acceptable, the Director shall then approve the plan and specify the timeframe within which the cited deficiencies shall be corrected.");("(e) In the event the Director makes a determination to revoke a delegation of authority, the State shall be provided an opportunity for a hearing prior to final action.")

**43 C.F.R. § 3191.3-2(a), (b)(2), Reinstatement** ("(a) For a delegation terminated by mutual consent under § 3191.3–1(a) of this title, the State shall apply for reinstatement by filing a petition with the Director, who shall determine whether such reinstatement should be granted.);("(b) For a delegation of authority revoked by the Director, the State shall file a petition requesting reinstatement. In applying for reinstatement, the State shall provide written evidence that it has remedied all defects for which the delegation was revoked and that it is fully capable of resuming the activities carried out under the delegation. Upon receipt of the petition, the following actions shall be taken… (2) The Director shall review the petition and the recommendation of the authorized officer and may approve the reinstatement of a delegation upon a determination that the findings of the authorized officer are acceptable.")

**43 C.F.R. § 3191.4(a), Standards of Delegation** ("The Director shall establish minimum standards to be used by a State in carrying out activities established in the delegation.")

*Forms "Approved by the Director"* Regulations require documents to be submitted on "a form approved by the Director" (citations to 43 C.F.R.):

**43 C.F.R. § 3101.1–1 Lease form.** ("A lease shall be issued only on the standard form approved by the Director.")

**43 C.F.R. § 3101.5-1(b) Wildlife refuge lands.** ("No offers for oil and gas leases covering wildlife refuge lands shall be accepted and no leases covering such lands shall be issued except as provided in § 3100.2 of this title. There shall be no drilling or prospecting under any lease heretofore or hereafter issued on lands within a wildlife refuge except with the consent and approval of the Secretary with the concurrence of the Fish and Wildlife Service as to the time, place and nature of such operations in order to give complete protection to wildlife populations and wildlife habitat on the areas leased, and all such operations shall be conducted in accordance with the stipulations of the Bureau on a form approved by the Director.")

**43 C.F.R. § 3104.6 Where filed and number of copies.** ("All bonds shall be filed in the proper BLM office on a current form approved by the Director. A single copy executed by the principal or, in the case of surety bonds, by both the principal and an acceptable surety is sufficient. A bond filed on a form not currently in use shall be acceptable, unless such form has been declared obsolete by the Director prior to the filing of such bond. For purposes of §§ 3104.2 and 3104.3(a) of this title, bonds or bond riders shall be filed in the Bureau State office having jurisdiction of the lease or operations covered by the bond or rider. Nationwide bonds may be filed in any Bureau State office (See § 1821.2–1).")

**43 C.F.R. § 3106.4-1 Transfers of record title and of operating rights (subleases).** ("Each transfer of record title or of an operating right (sublease) shall be filed with the proper BLM office on a current form approved by the Director or exact reproductions of the front and back of such form. A transfer filed on a form not currently in use shall be acceptable, unless such form has been declared obsolete by the Director prior to the filing of the transfer. A separate form for each transfer, in triplicate, originally executed shall be filed for each lease out of which a transfer is made. Only 1 originally executed copy of a transferee's request for approval for each transfer shall be required, including in those instances where several transfers to a transferee have been submitted at the same time (See also § 3106.4–3). Copies of documents other than the current form approved by the Director shall not be submitted. However, reference(s) to other documents containing information affecting the terms of the transfer may be made on the submitted form.")

**43 C.F.R. § 3109.1-5(a) Compensatory royalty agreement or lease.** ("The lease or compensatory royalty agreement shall be on a form approved by the Director.")

**43 C.F.R. § 3110.4(a) Requirements for offer.** ("An offer to lease shall be made on a current form approved by the Director, or on unofficial copies of that form in current use. For noncompetitive leases processed under § 3108.2–4 of this title, the current lease form shall be used. Copies shall be exact reproductions on 1 page of both sides of the official approved form, without additions, omissions, or other changes, or advertising. The original copy of each offer must be typed or printed plainly in ink, signed in ink and dated by the offeror or an authorized agent, and must include payment of the first year's rental and the processing fee for noncompetitive lease applications found in the fee schedule in § 3000.12 of this chapter. The original and 2 copies of each offer to lease, with each copy showing that the original has been signed, shall be filed in the proper BLM office. A noncompetitive offer to lease a future interest applied for under § 3110.9 must include the processing fee for noncompetitive lease applications found in the fee schedule in § 3000.12 of this chapter. Where remittances for offers are returned

for insufficient funds, the offer shall not obtain priority of filing until the date the remittance is properly made.")

**43 C.F.R. § 3110.7(e) Action on offer.** ("Filing an offer on a lease form not currently in use, unless such lease form has been declared obsolete by the Director prior to the filing shall be allowed, on the condition that the offeror is bound by the terms and conditions of the lease form currently in use.")

**43 C.F.R. § 3120.3-2 Filing of a nomination for competitive leasing.** ("Nominations filed in response to a List of Lands Available for Competitive Nominations and on a form approved by the Director shall: (a) Include the nominator's name and personal or business address. The name of only one citizen, association or partnership, corporation or municipality shall appear as the nominator. All communications relating to leasing shall be sent to that name and address, which shall constitute the nominator's name and address of record: (b) Be completed, signed in ink and filed in accordance with the instructions printed on the form and the regulations in this subpart. Execution of the nomination form shall constitute a legally binding offer to lease by the nominator, including all terms and conditions; (c) Be filed within the filing period and in the BLM office specified in the List of Lands Available for Competitive Nominations. A nomination shall be unacceptable and shall be returned with all moneys refunded if it has not been completed and timely filed in accordance with the instructions on the form or with the other requirements in this subpart; and (d) Be accompanied by a remittance sufficient to cover the national minimum acceptable bid, the first year's rental per acre or fraction thereof, and the administrative fee as set forth in § 3120.5–2(b) of this title for each parcel nominated on the form.")

**43 C.F.R. § 3120.5-3(a) Award of lease.** ("A bid shall not be withdrawn and shall constitute a legally binding commitment to execute the lease bid form and accept a lease, including the obligation to pay the bonus bid, first year's rental, and administrative fee. Execution by the high bidder of a competitive lease bid form approved by the Director constitutes certification of compliance with subpart 3102 of this title, shall constitute a binding lease offer, including all terms and conditions applicable thereto, and shall be required when payment is made in accordance with § 3120.5–2(b) of this title. Failure to comply with § 3120.5–2(c) of this title shall result in rejection of the bid and forfeiture of the monies submitted under § 3120.5–2(b) of this title.")

**43 C.F.R. § 3132.5-1 Forms.** ("Leases shall be issued on forms approved by the Director.")

**43 C.F.R. § 3134.1-1 Form of bond.** ("All bonds furnished by a lessee, operating rights owner (sublessee), or operator shall be on a form approved by the Director.")

**43 C.F.R. § 3135.1-3 Separate filing for transfers.** ("A separate instrument of transfer shall be filed for each lease on a form approved by the Director or an exact reproduction of the front and back of such form. Any earlier editions of the current form are deemed obsolete and are unacceptable for filing. When transfers to the same person, association or corporation, involving more than 1 lease are filed at the same time for approval, 1 request for approval and 1 showing as to the qualifications of the transferee shall be sufficient.")

13

**43 C.F.R. § 3141.7** Award of lease. ("After determining the highest responsible qualified bidder, the authorized officer shall send 3 copies of the lease on a form approved by the Director, and any necessary stipulations, to the successful bidder. The successful bidder shall, not later than the 30th day after receipt of the lease, execute the lease, pay the balance of the bid and the first year's rental, and file a bond as required in subpart 3104 of this title. Failure to comply with this section shall result in rejection of the lease.")

**43 C.F.R. § 3151.1 Notice of intent to conduct oil and gas geophysical exploration operations.** ("Parties wishing to conduct oil and gas geophysical exploration outside of the State of Alaska shall file a Notice of Intent to Conduct Oil and Gas Exploration Operations, referred to herein as a notice of intent. The notice of intent shall be filed with the District Manager of the proper BLM office on the form approved by the Director. Within 5 working days of the filing date, the authorized officer shall process the notice of intent and notify the operator of practices and procedures to be followed. If the notice of intent cannot be processed within 5 working days of the filing date, the authorized officer shall promptly notify the operator as to when processing will be completed, giving the reason for the delay. The operator shall, within 5 working days of the filing date, or such other time as may be convenient for the operator, participate in a field inspection if requested by the authorized officer. Signing of the notice of intent by the operator shall signify agreement to comply with the terms and conditions contained therein and in this part, and with all practices and procedures specified at any time by the authorized officer.")

### 2.   Coal

*Regional Leasing Levels*

**43 C.F.R. § 3420.2(a)(5) Regional leasing levels.** ("The regional coal team transmittal to the Secretary shall be made through the Director, who may provide additional data and recommendations, but only as separate documentation.")

*Tract Selection and Sale Schedule*

**43 C.F.R. § 3420.3-4(g) Regional tract ranking, selection, environmental analysis and scheduling.** ("When BLM completes and releases the final regional lease sale environmental impact statement, the regional coal team will meet and recommend specific tracts for lease sale and a lease sale schedule. The regional coal team will provide notice in the Federal Register of the date and location at least 45 days before its meeting. The chairperson shall submit the recommendations to the Director. Any disagreement as to the recommendation among the team shall be documented and submitted by the chairperson along with the team recommendation. The Director shall submit the final regional environmental impact statement to the Secretary for his/her decision, together with the recommendation of the team and any recommendations the Director may wish to make.")

*Split-Estate Leasing, Surface Owner Appeals of Unqualified Determination*

**43 C.F.R. § 3427.2(k) Procedures.** ("Any surface owner determined to be unqualified by decision of the field official of the surface management agency shall have 30 days from the date

of receipt of such decision in which he/she may appeal the decision to the appropriate State Director of the Bureau of Land Management. The surface owner shall have the right to appeal the State Director's decision to the Director, Bureau of Land Management, within 30 days of receipt of that decision. Both appeals under this paragraph shall be in writing. As an exception to the provisions of § 3000.4 of this title, the decision of the Director shall be the final administrative action of the Department of the Interior.")

*DOI/State Regional Coal Team*

**43 C.F.R. § 3400.4(a) Federal/state government cooperation.** ("In order to implement the requirements of law for Federal-state cooperation in the management of Federal lands, a Department-state regional coal team shall be established for each coal production region defined pursuant to § 3400.5. The team shall consist of a Bureau of Land Management field representative for each state in the region, who will be the Bureau of Land Management State Director, or, in his absence, his designated representative; the Governor of each state included in the region or, in his absence, his designated representative; and a representative appointed by and responsible to the Director of the Bureau of Land Management. The Director's representative shall be chairperson of the team. If the region is a multi-state region under the jurisdiction of only one Bureau of Land Management State Office, each State Director shall designate a Bureau of Land Management representative for each state.")

*Approval of forms*

**43 C.F.R. § 3474.1(a) Bonding requirements.** ("Before a lease may be issued, one of the following forms of lease bond shall be furnished: (1) Corporate surety bonds; (2) Cash bond; or (3) Personal lease bonds secured by negotiable U.S. bonds of a par value equal to the amount of the required surety bond, together with a power of attorney executed on a form approved by the Director.")

**43 C.F.R. § 3474.1(b) Bonding requirements.** ("The applicant or bidder shall file the lease bond in the proper office within 30 days of receiving notice. The lease bond shall be furnished on a form approved by the Director.")

**43 C.F.R. § 3475.1 Lease form.** ("Leases shall be issued on a standard form approved by the Director. The authorized officer may modify those provisions of the standard form which are not required by statute or regulations and may add such additional stipulations and conditions as he/she deems appropriate.")

**43 C.F.R. § 3440.1–1(a) Forms.** ("Four copies of the application for a license to mine coal for domestic needs or for a renewal of such a license shall be filed on a form approved by the Director, or a substantial equivalent of the form, in the Bureau of Land Management State Office having jurisdiction over the lands involved (43 C.F.R. subpart 1821).")

3.  **Solid Leasables (non-coal)**

*Approval of forms*

**43 C.F.R. § 3581.4–3 Lease form and execution.** ("A lease on a form approved by the Director shall be furnished to the applicant, who shall be allowed 30 days from notice within which to execute and return the lease to the proper BLM office and to furnish the required bond.43 C.F.R. 3585.4-2")

**43 C.F.R. § 3585.4–2 Terms and conditions.** ("Leases shall be issued on a form approved by the Director and under such terms and conditions as prescribed in the lease form and subpart 3561 of this title. Where deemed necessary by the authorized officer, special lease stipulations also shall be included for the protection of the surface, its resources and use for recreation.")

**43 C.F.R. § 3590.0-2 Policy** ("The regulations in this part are administered under the direction of the Director, Bureau of Land Management.")

### 4.  Mineral Materials

*Approval of forms*

**43 C.F.R. § 3602.45(g) What final steps will BLM take before issuing me a contract?** ("Contract form. BLM will make all sales on BLM standard contract forms approved by the Director, Bureau of Land Management. We will include as necessary additional provisions and stipulations in the contract to conform to the provisions of the competitive sale notice and to address environmental concerns or other site-specific issues.")

### 5.  Land Use Planning

**43 C.F.R. §1601.0-4(a) Responsibilities.** ("National level policy and procedure guidance for planning shall be provided by the Secretary and the Director.")

**43 C.F.R. §1610.2(b) Public participation.** ("The Director shall, early in each fiscal year, publish a planning schedule advising the public of the status of each plan in process of preparation or to be started during that fiscal year, the major action on each plan during that fiscal year and projected new planning starts for the 3 succeeding fiscal years. The notice shall call for public comments on projected new planning starts so that such comments can be considered in refining priorities for those years.")

**43 C.F.R. §1610.3-2(e) Consistency Requirements.** ("Prior to the approval of a proposed resource management plan, or amendment to a management framework plan or resource management plan, the State Director shall submit to the Governor of the State(s) involved, the proposed plan or amendment and shall identify any known inconsistencies with State or local plans, policies or programs. The Governor(s) shall have 60 days in which to identify inconsistencies and provide recommendations in writing to the State Director. If the Governor(s) does not respond within the 60–day period, the plan or amendment shall be presumed to be consistent. If the written recommendation(s) of the Governor(s) recommend changes in the proposed plan or amendment which were not raised during the public participation process on

16

that plan or amendment, the State Director shall provide the public with an opportunity to comment on the recommendation(s). If the State Director does not accept the recommendations of the Governor(s), the State Director shall notify the Governor(s) and the Governor(s) shall have 30 days in which to submit a written appeal to the Director of the Bureau of Land Management. The Director shall accept the recommendations of the Governor(s) if he/she determines that they provide for a reasonable balance between the national interest and the State's interest. The Director shall communicate to the Governor(s) in writing and publish in the Federal Register the reasons for his/her determination to accept or reject such Governor's recommendations.")

**43 C.F.R. §1610.5-2 Protest procedures.** ("(a) Any person who participated in the planning process and has an interest which is or may be adversely affected by the approval or amendment of a resource management plan may protest such approval or amendment. A protest may raise only those issues which were submitted for the record during the planning process. (1) The protest shall be in writing and shall be filed with the Director. The protest shall be filed within 30 days of the date the Environmental Protection Agency published the notice of receipt of the final environmental impact statement containing the plan or amendment in the Federal Register. For an amendment not requiring the preparation of an environmental impact statement, the protest shall be filed within 30 days of the publication of the notice of its effective date. (2) The protest shall contain: (i) The name, mailing address, telephone number and interest of the person filing the protest; (ii) A statement of the issue or issues being protested; (iii) A statement of the part or parts of the plan or amendment being protested; (iv) A copy of all documents addressing the issue or issues that were submitted during the planning process by the protesting party or an indication of the date the issue or issues were discussed for the record; and (v) A concise statement explaining why the State Director's decision is believed to be wrong. (3) The Director shall promptly render a decision on the protest. The decision shall be in writing and shall set forth the reasons for the decision. The decision shall be sent to the protesting party by certified mail, return receipt requested. (b) The decision of the Director shall be the final decision of the Department of the Interior.")

### 6.   Mineral Development Impact Relief Loans

**43 C.F.R. §1882.2(a)   Qualifications.** ("Any State receiving payments from the Federal Government under the provisions of section 35 of the Act or any political subdivision of such a State that can document to the satisfaction of the Director that it has suffered or will suffer adverse social and economic impacts as a result of the leasing and development of Federal mineral deposits under the provisions of the Act shall be considered qualified to receive loans made under this subpart.")

**43 C.F.R. §1882.2(b)   Qualifications.** ("A loan to a qualified political subdivision of a State receiving payment from the Federal Government under the provisions of section 35 of the Act shall be conditioned upon a showing of proof, satisfactory to the Director, by the political subdivision that it has legal authority to pledge funds payable to the State under section 35 of the Act in sufficient amounts to secure the payment of the loan.")

**43 C.F.R. §1882.3  Application procedures.** ("No later than October 1 of the fiscal year in which a loan is to be made, the State or its political subdivision shall submit to the Director a letter signed by the authorized agent requesting a loan. The authorized agent shall furnish proof of authority to act for the State or political subdivision with the application. Such letter shall constitute a formal application for a loan under this subpart and shall contain the following: (a) The name of the State or political subdivision requesting the loan. (b) The amount of the loan requested. (c) The name, address, and position of the person in the State or political subdivision who is to serve as contact on all matters concerning the loan. (d) A description and documentation of the adverse social and economic impacts suffered as a result of the leasing and development of Federal mineral deposits. (e) An analysis and documentation of the additional expenses generated as a result of the leasing and development of Federal minerals. (f) Proposed uses of the funds derived from the loan. (g) Evidence that the loan and repayment provisions are authorized by State law. (h) The Director may request any additional information from the applicant that is needed to properly act on the loan application. The applicant shall furnish such additional information in any form acceptable to the applicant and the Director. No loan shall be granted unless such additional information is timely received by the Director.")

**43 C.F.R. §1882.5-8  Additional terms and conditions.** ("The Director may impose any terms and conditions that he determines necessary to assure the achievement of the purpose of the loans made under this subsection.")

### 7.  Exchanges

**43 C.F.R. §2200.0-4  Responsibilities.** ("The Director of the Bureau of Land Management has the responsibility of carrying out the functions of the Secretary of the Interior under these regulations.")

### 8.  Withdrawals

**43 C.F.R. §2310.1(a)(7) Procedures: General.** ("The basic steps leading up to the making, modification or extension of a withdrawal, except emergency withdrawals, are…Transmittal of the case file to the Director, Bureau of Land Management, for the Director's review and decision regarding the findings and recommendations of the authorized officer;")

**43 C.F.R. §2310.1-3(a) Submission of withdrawal petitions.** ("Withdrawal petitions shall be submitted to the Director, Bureau of Land Management, for transmittal to the Secretary.")

**43 C.F.R. §2310.3-2(f) Development and processing of the case file for submission to the Secretary.** ("Following the discussion process, or in the absence thereof, the authorized officer shall prepare the findings, keyed specifically to the relevant portions of the case file, and the recommendations to the Secretary in connection with the application. The authorized officer also shall prepare, for consideration by the Secretary, a proposed order or notice of denial. In the case of a national defense withdrawal which can only be made by an Act of Congress, the authorized

officer shall prepare, with the cooperation of the applicant, a draft legislative proposal to implement the applicant's withdrawal request, together with proposed recommendations for submission by the Secretary to the Congress. The findings and recommendations of the authorized officer, and the other documents previously specified in this section to be prepared by the authorized officer shall be made a part of the case file. The case file shall then be sent to the Director, Bureau of Land Management. At the same time, a copy of the findings and recommendations of the authorized officer shall be sent to the applicant. (1) If the applicant objects to the authorized officer's findings and recommendations to the Secretary, the applicant may, within 30 days of the receipt by the applicant of notification thereof, state its objections in writing and request the Director to review the authorized officer's findings and recommendations. The applicant shall be advised of the Director's decision within 30 days of receipt of the applicant's statement of objections in the Bureau of Land Management's Washington office. The applicant's statement of objections and the Director's decision shall be made a part of the case file and thereafter the case file shall be submitted to the Secretary. (2) If the applicant disagrees with the decision of the Director, Bureau of Land Management, the applicant may, within 30 days of receipt by the applicant of the Director's decision, submit to the Secretary a statement of reasons for disagreement. The statement shall be considered by the Secretary together with the findings and recommendations of the authorized officer, the applicant's statement of objections, the decision of the Director, the balance of the case file and such additional information as the Secretary may request.")

### 9.  Desert Land Entry

**43 C.F.R. §2521.2(a)(1) Petitions and applications. Filing and fees.** ("A person who desires to enter public lands under the desert land laws must file an application together with a petition on forms approved by the Director, properly executed. However, if the lands described in the application have been already classified and opened for disposition under the desert land laws, no petition is required. The documents must be filed in the proper office (see § 1821.2–1 of this chapter).")

**43 C.F.R. 2521.3(c)(2) Assignment. Showing required of assignees; recognition of assignments.** ("An assignee must file with his deed of assignment, a statement on a form approved by the Director, showing his qualifications to take the entry assigned to him. He must show what applications or entries, if any, have been made by him or what entries assigned to him under the agricultural public land laws, and he must also show his qualifications as a citizen of the United States; that he is 21 years of age or over; and also that he is a resident citizen of the State in which the land assigned to him is situated, except in the State of Nevada, where citizenship of the United States only is required. If the assignee is not a native-born citizen of the United States, he should also furnish a statement as to his citizenship status in accordance with subpart 1811 of this chapter. If the assignee is a woman, she should in all cases state whether she is married, and if so, she must make the showing required by subpart 1811 of this chapter. Desert-land entries are initiated by the payment of 25 cents per acre, and no assignable right is acquired by the application prior to such payment. (6 L.D. 541, 33 L.D. 152.) An assignment

made on the day of such payment, or soon thereafter, is treated as suggesting fraud, and such cases will be carefully scrutinized. The provisions of law authorizing the assignment of desert entries, in whole or in part, furnish no authority to a claimant under said law to make an executory contract to convey the land after the issuance of patent and thereafter to proceed with the submission of final proof in furtherance of such contract. (34 L.D. 383.) The sale of land embraced in an entry at any time before final payment is made must be regarded as an assignment of the entry, and in such cases the person buying the land must show that he possesses all the qualifications required of an assignee. (29 L.D. 453.) The assignor of a desert-land entry may execute the assignment before any officer authorized to take acknowledgements of deeds. The assignee must furnish a statement on a form approved by the Director as to his qualifications.")

### 10. Indian Allotments

**43 C.F.R. §2531.2(a) Petition and applications.** ("Any person desiring to receive an Indian allotment (other than those seeking allotments in national forests, for which see subpart 2533 of this part) must file with the authorized officer, an application, together with a petition on forms approved by the Director, properly executed, together with a certificate from the authorized officer of the Bureau of Indian Affairs that the person is Indian and eligible for allotment, as specified in § 2531.1(b). However, if the lands described in the application have been already classified and opened for disposition under the provisions of this part, no petition is required. The documents must be filed in accordance with the provisions of § 1821.2 of this chapter. The petition and the statement attached to the application for certificate must be signed by the applicant.")

### 11. Color of Title Act

**43 C.F.R. §2541.2(a) Procedures.** ("Application. (1) An application for a claim of class 1 or of class 2 must be filed in duplicate on a form approved by the Director. It must be filed in accordance with the provisions of § 1821.2 of this chapter. (2) Every application must be accompanied by a filing fee of $10, which will be nonreturnable. (3) The application must be in typewritten form, or in legible handwriting, and it must be completely executed and signed by the applicant. (4) Every applicant must furnish information required in the application form concerning improvements, cultivation, conveyances of title, taxes, and related matters.")

**43 C.F.R. §2541.2(c) Procedures.** ("Presentation and verification of factual statements. (1) Information relating to all record and nonrecord conveyances, or to nonrecord claims of title, affecting the land shall be itemized on a form approved by the Director. The statements of record conveyances must be certified by the proper county official or by an abstractor. The applicant may be called upon to submit documentary or other evidence relating to conveyances or claims. Abstracts of title or other documents which are so requested will be returned to the applicant. (2) Applicants for claims of class 2 must itemize all information relating to tax levies and payments

on the land on a form approved by the Director which must be certified by the proper county official or by an abstractor.")


### 12. Alaska Occupancy and Use

**43 C.F.R. §2561.1(a) Applications.** ("Applications for allotment properly and completely executed on a form approved by the Director, Bureau of Land Management, must be filed in the proper office which has jurisdiction over the lands.")

**43 C.F.R. §2561.2(a) Proof of use and occupancy.** ("An allotment will not be made until the lands are surveyed by the Bureau of Land Management, and until the applicant or the authorized officer of the Bureau of Indian Affairs has made satisfactory proof of substantially continuous use and occupancy of the land for a period of five years by the applicant. Such proof shall be made on a form approved by the Director, Bureau of Land Management, and filed in the proper land office. If made by the applicant, it must be signed by him, but if he is unable to write his name, his mark or thumb print shall be impressed on the statement and witnessed by two persons. This proof may be submitted with the application for allotment if the applicant has then used and occupied the land for five years, or may be made at any time within six years after the filing of the application when the requirements have been met.")

**43 C.F.R. §2562.1(b) Initiation of claim.** ("Form of notice. The notice must be filed on a form approved by the Director in triplicate if the land is unsurveyed, or in duplicate if surveyed, and shall contain: (1) The name and address of the claimant, (2) age and citizenship, (3) date of occupancy, and (4) the description of the land by legal subdivisions, section, township and range, if surveyed, or, if unsurveyed, by metes and bounds with reference to some natural object or permanent monument, giving, if desired, the approximate latitude and longitude. The notice must designate the kind of trade, manufacture, or other productive industry in connection with which the site is maintained or desired.")

**43 C.F.R. §2564.1  Application for restricted deed.** ("A native Indian or Eskimo of Alaska who occupies and claims a tract of land in a trustee townsite and who desires to obtain a restricted deed for such tract should file application therefor on a form approved by the Director, with the townsite trustee.")

**43 C.F.R. §2564.5  Sale of land for which restricted deed was issued.** ("When a native possessing a restricted deed for land in a trustee townsite issued under authority of the Act of May 25, 1926 (44 Stat. 629; 43 U.S.C. § 733–736), desires to sell the land, he should execute a deed on a form approved by the Director, prepared for the approval of the Secretary of the Interior, or his authorized representative, and send it to the townsite trustee in Alaska. The townsite trustee will forward the deed to the Area Director of the Bureau of Indian Affairs who will determine whether it should be approved. Where the deed is approved it shall be returned by the Area Director, Bureau of Indian Affairs, through the townsite trustee to the vendor. In the event the Area Director determines that the deed shall not be approved, he shall so inform the native possessing the restricted deed, who shall have a right of appeal from such finding or decision to the Commissioner of Indian Affairs within sixty days from the date of notification of such finding or decision. The appeal shall be filed with the Area Director. Should the

21

Commissioner uphold the decision of the Area Director, he shall notify the applicant of such action, informing him of his right of appeal to the Secretary of the Interior.")

### 13. Alaska Native Selections

**43 C.F.R. §2650.2(a) Application procedures for land selections.** ("Pursuant to sections 14(g) and 22(b) of the Act, all conveyances issued under the act shall exclude any lawful entries or entries which have been perfected under, or are being maintained in compliance with, laws leading to the acquisition of title, but shall include land subject to valid existing rights of a temporary or limited nature such as those created by leases (including leases issued under section 6(g) of the Alaska Statehood Act), contracts, permits, rights-of-way, or easements.")

**43 C.F.R. §2650.4-7 (a)(9). Public easements.** ("After reviewing the identified easements needs, the Director shall tentatively determine which easements shall be reserved. Tentative determinations of major waterways shall also be made by the Director and shall apply to rivers, streams, and lakes. All lakes over 640 acres in size shall be screened to determine if they qualify as major waterways. Those smaller than 640 acres may be considered on a case-by-case basis. The Director shall issue a notice of proposed easements which notifies all parties that participated in the development of the easement needs and information on major waterways as to the tentative easement reservations and which directs that all comments be sent to the LUPC and the Director.")

**43 C.F.R. §2650.4-7 (a)(10). Public easements.** ("The State and the LUPC shall be afforded 90 days after notice by the Director to make recommendations with respect to the inclusion of public easements in any conveyance. If the Director does not receive a recommendation from the LUPC or the State within the time period herein called for, he may proceed with his determinations.")

**43 C.F.R. §2650.4-7 (a)(11). Public easements.** ("Prior to making a determination of public easements to be reserved, the Director shall review the recommendations of the LUPC, appropriate Native corporation(s), other Federal agencies, the State, and the public. Consideration shall be given to recommendations for public easement reservations which are timely submitted to the Bureau of Land Management and accompanied by written justification.")

**43 C.F.R. §2650.4-7 (a)(12). Public easements.** ("The Director, after such review, shall prepare a decision to convey that includes all necessary easements and other appropriate terms and conditions relating to conveyance of the land. If the decision prepared by the Director is contrary to the LUPC's recommendations, he shall notify the LUPC of the variance(s) and shall afford the LUPC 10 days in which to document the reasons for its disagreement before making his final decision. The Director shall then issue a Decision to Issue Conveyance (DIC).")

**43 C.F.R. §2650.4-7 (a)(13). Public easements.** ("The Director shall terminate a public easement if it is not used for the purpose for which it was reserved by the date specified in the conveyance, if any, or by December 18, 2001, whichever occurs first, He may terminate an easement at any time if he finds that conditions are such that its retention is no longer needed for

public use or governmental function. However, the Director shall not terminate an access easement to isolated tracts of publicly owned land solely because of the absence of proof of public use. Public easements which have been reserved to guarantee international treaty obligations shall not be terminated unless the Secretary determines that the reasons for such easements no longer justify the reservation. No public easement shall be terminated without proper notice and an opportunity for submission of written comments or for a hearing if a hearing is deemed to be necessary by either the Director or the Secretary.")

### 14. Tramroads and Logging Roads

**43 C.F.R. 2812.5-3  Bonds in connection with existing roads.** ("An applicant for permit or a permittee desiring to use an existing road owned or controlled by the United States, shall prior to such use post a bond on a form prescribed by the Director. The amount of the bond shall be determined by the authorized officer but in no event less than five hundred dollars ($500) per mile or fraction thereof. The bond shall be executed by an approved corporate surety, or the permittee may deposit an equivalent amount in cash or negotiable securities of the United States and the bond shall be conditioned upon compliance with subpart 2812 and the terms and conditions of the permit.")

**43 C.F.R. §2812.6-1(a) Approval.** ("Upon the applicant's compliance with the appropriate provisions of this paragraph and if it is determined that the approval of the application will be in the public interest, the authorized officer may, in his discretion, issue an appropriate permit, upon a form prescribed by the Director.")

### 15. Recreation and Public Purposes Act

**43 C.F.R. §2912.1-1(b) Terms and conditions of lease.** ("Leases shall be issued on a form approved by the Director, Bureau of Land Management and shall contain terms and conditions required by law, and public policy, and which the authorized officer considers necessary for the proper development of the land, for the protection of Federal property, and for the protection of the public interest.")

### 16. Alaska Fur Farm

**43 C.F.R. §2916.2-1(c) Applications.** ("Form of lease; rental and royalty; report of annual operations. (1) Leases will be issued on a form approved by the Director. (2) Prior to the issuance of a lease and annually thereafter, the lessee shall pay an advance rental of $5 per annum if the lease embraces 10 acres or less, a rental of $25 per annum if the leased area is more than 10 acres but not more than 640 acres, and a rental of $50 per annum if the leased area exceeds 640 acres. (3) Within 60 days after the end of each lease year the lessee shall file with the land office a report on a form approved by the Director, in duplicate, showing his operations

23

under the lease and his gross receipts thereunder from the sale of live animals and pelts for the preceding lease year. The lessee shall pay, at the time of filing the report, a royalty of 1 percent of such gross receipts deducting therefrom the amount of the advance rental payment made for such preceding lease year.")

### 17. Leases Permits and Easements

**43 C.F.R. §2920.1-1(b) Authorized use.** ("Permits shall be used to authorize uses of public lands for not to exceed 3 years that involve either little or no land improvement, construction, or investment, or investment which can be amortized within the term of the permit. A permit conveys no possessory interest. The permit is renewable at the discretion of the authorized officer and may be revoked in accordance with its terms and the provisions of § 2920.9–3 of this title. Permits shall be issued on a form approved by the Director, Bureau of Land Management, that has been filed by the applicant with the appropriate Bureau of Land Management office.")

**43 C.F.R. §2920.6(f) Reimbursement of costs.** ("The selected applicant shall, before a land use authorization is issued, submit a payment based on a schedule of rates developed by the Director, Bureau of Land Management, for monitoring rehabilitation or restoration of the lands upon expiration of the land use authorization.")

### 18. Permits for Recreation on Public Lands

**43 C.F.R. §2932.31(a) How does BLM establish fees for Special Recreation Permits?** ("The BLM Director establishes fees, including minimum annual fees, for Special Recreation Permits for commercial activities, organized group activities or events, and competitive events.")

**43 C.F.R. §2932.31(b) How does BLM establish fees for Special Recreation Permits?** ("The BLM Director may adjust the fees as necessary to reflect changes in costs and the market, using the following types of data: (1) The direct and indirect cost to the government; (2) The types of services or facilities provided; and (3) The comparable recreation fees charged by other Federal agencies, non-Federal public agencies, and the private sector located within the service area.")

**43 C.F.R. §2932.31(c) How does BLM establish fees for Special Recreation Permits?** ("The BLM Director will publish fees and adjusted fees in the Federal Register.")

### 19. Leases of Pierce Act Grazing

**43 C.F.R. §4610.2-1  Form of lease.** ("Leases under the Pierce Act should conform in general to a form approved by the Director. This form is believed adaptable for use in all of the States within which grazing districts have been established under the Taylor Grazing Act. Leases under

the Pierce Act must be executed by the lessor in the manner prescribed by the laws of the State within which the lands leased are situated.")


### 20. Wild Horses and Burros

**43 C.F.R. §4750.3-1  Application for private maintenance of wild horses and burros.** ("An individual applying for a wild horse or burro shall file an application with the Bureau of Land Management on a form approved by the Director.")

**43 C.F.R. §4750.4-2(c)(1) Adoption fee.** ("The BLM Director may reduce or waive the fee when wild horses or burros are un-adoptable at the base adoption fee.").

**43 C.F.R. §4750.5(a) Application for title to wild horses and burros.** ("The adopter shall apply for title, using a form designated by the Director, upon signing the Private Maintenance and Care Agreement.")

**43 C.F.R. §4770.4  Arrest.** ("The Director of the Bureau of Land Management may authorize an employee who witnesses a violation of the Act or these regulations to arrest without warrant any person committing the violation, and to take the person immediately for examination or trial before an officer or court of competent jurisdiction. Any employee so authorized shall have power to execute any warrant or other process issued by an officer or court of competent jurisdiction to enforce the provisions of the Act or these regulations.")


### 21. Forestry

**43 C.F.R. §5040.2(a)-(b) What will BLM do before it establishes sustained-yield forest units?** ("Before BLM designates sustained-yield forest units, it will: (a) Hold a public hearing in the area where it proposes to designate the units. BLM will provide notice, approved by the BLM Director, to the public of any hearing concerning sustained-yield forest units. This notice must be published once a week for four consecutive weeks in a newspaper of general circulation in the county or counties in which the forest units are situated. BLM may also publish the notice in a trade publication; and (b) Forward the minutes or meeting records to the BLM Director, along with an appropriate recommendation concerning the establishment of the units.")

**43 C.F.R. §5040.3  How does BLM establish sustained-yield forest units?** ("After a public hearing, BLM will publish a notice in a newspaper of general circulation in the county or counties affected by the proposed units, stating whether or not the BLM Director has decided to establish the units. If the BLM Director determines that the units should be established, BLM will include in its notice information on the geographical description of the sustained-yield forest units, how the public may review the BLM document that will establish the units, and the date the units will become effective. BLM will publish the notice before the units are established.")

**43 C.F.R. §5400.0-7(a) Public hearings to determine surplus quantities and species of unprocessed timber.** ("Public hearings will be held when authorized by the Director to seek advice and counsel as to the specific quantities of grades and species of unprocessed timber

surplus to the needs of domestic users and processors. Such species and quantities thereby determined to be surplus by the Secretary, may be designated as available for export by the Secretary.")

**43 C.F.R. §5400.0-7 (d) Public hearings to determine surplus quantities and species of unprocessed timber.** ("The hearing will be conducted by a representative or representatives of the Department of the Interior and the Department of Agriculture, respectively. At the conclusion of the hearing, the record thereof together with appropriate recommendations shall be forwarded to the Director for further action deemed appropriate. The Director shall give the public due notice as to the quantities and species of unprocessed timber determined to be surplus to the needs of domestic users and processors.")

**43 C.F.R. §5424.0-6(a) Policy.** ("All timber sales shall be made on contract or permit forms approved by the Director.")

**43 C.F.R. §5511.2-2 Free use of timber for Government purposes.** ("Persons contracting with Government officials to furnish firewood or timber for United States Army posts or for other authorized Government purposes may procure it from the vacant and unreserved public lands in Alaska free of charge, provided the contracts do not include any charge for the value of the firewood or timber. Where it is desired to procure timber for such use, an application for permit in duplicate on a form approved by the Director must be filed, as in other cases, and a copy of the contract must be attached to the application.")

**43 C.F.R. §5511.2-3(a) Permits.** ("Application for permit. Before timber is cut for free use, an application for permit in duplicate on a form approved by the Director must be filed in an office or with an employee of the Bureau of Land Management in Alaska.")

**43 C.F.R. §5511.3-2(a) Permits.** ("Application for permit. An application for permit in duplicate, must be made on a form approved by the Director and filed in any office or with any employee of the Bureau of Land Management authorized to issue a permit. A free-use permit may be applied for without formal application for the removal of not more than three Christmas trees upon oral or written request.")

**43 C.F.R. §5511.3-2 (b)(1) Permits.** ("A free-use permit, on a form approved by the Director, shall incorporate the provisions, if any, governing the selection, removal, and use of timber. Free-use permits shall not be issued when the applicant owns or controls an adequate supply of the material to meet his needs. Timber applied for must be for the applicant's own use and may not be bartered or sold. No timber may be cut or removed until the permit is issued.")


### 22. Cadastral Survey

**43 C.F.R. §9185.2-3(a)(3) Unsurveyed islands and omitted lands.** ("If the applicant elects to donate services, such services shall be conducted and performed pursuant to the criteria established by the Director of the Bureau of Land Management.")