## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| STEVE BULLOCK, in his official capacity as Governor of Montana; MONTANA DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT, an agency within the United States Department of the Interior; WILLIAM PERRY PENDLEY, in his official capacity as the person exercising authority of the Director of the Bureau of Land Management; UNITED STATES DEPARTMENT OF THE INTERIOR; DAVID BERNHARDT, in his official capacity as Secretary of the United States Department of the Interior,<br><br>Defendants. | **4:20-cv-00062-BMM**<br><br>**ORDER** |

## BACKGROUND

The Governor of Montana and the Montana Department of Natural

Resources and Conservation ("Plaintiffs") brought this action against the U.S.

Bureau of Land Management ("BLM"), William Perry Pendley in his official

capacity, and various government agencies and agents in their official capacities

(together, "Federal Defendants"). Plaintiffs alleged that Pendley unlawfully served as Acting BLM Director in violation of the Appointments Clause of the U.S. Constitution, the Federal Vacancies Reform Act of 1998 ("FVRA"), and the Administrative Procedure Act ("APA"). (Doc. 1). Plaintiffs filed what they fashioned as an Expedited Motion for Summary Judgment on August 20, 2020. (Doc. 10). The Court held a hearing on the Motion for Summary Judgment on September 21, 2020.

The Court granted Plaintiff's Motion for Summary Judgment in an Order on September 25, 2020 ("September Order"). (Doc. 25). The Court granted the requested declaratory and injunctive relief, in part enjoining Pendley from exercising the authority of BLM Director. *See id.* at 34. The Court determined, however, that further relief likely should be granted under the FVRA and APA. *See id.* at 32. The Court found that any "function or duty" of the BLM Director that had been performed by Pendley would have no force and effect and must be set aside as arbitrary and capricious. *See id.* at 33; 5 U.S.C. §§ 3348(d), 706(2)(A).

The Court sought supplemental briefing to address what acts of Pendley should be set aside as unlawful. (Doc. 25 at 34). Plaintiffs filed a Supplemental Brief requesting the Court set aside two Resource Management Plans ("RMPs") and a separate RMP amendment in Montana. (Doc. 26 at 8). Defendants filed a Supplemental Brief asserting "[t]he answer is none." (Doc. 28 at 1). The Center for

Biological Diversity, Western Environmental Law Center, Western Watersheds
Project, and WildEarth Guardians (collectively, "Conservation Groups") filed a
motion seeking to file an amicus brief that would detail Pendley's actions "beyond
the State of Montana" that could be implicated by the Court's Order. (Doc. 27).

## REMEDY ANALYSIS

### I.    Montana Resource Management Plans

BLM manages the use and maintenance of 245 million acres of federal
public lands (around 12 percent of the nation's landmass) and 700 million acres of
subsurface acreage (around 30 percent of the nation's minerals).  BLM manages 27
million acres in Montana—nearly one-third of the state. The Federal Land
Management and Policy Act ("FLPMA") charges BLM with administering those
lands and subsurface acres.

FLPMA requires that "the public lands be managed in a manner that will
protect the quality of scientific, scenic, historical, ecological, environmental, air
and atmospheric, water resource, and archeological values." 43 U.S.C. §
1701(a)(8). Congress established the office of Director to lead BLM. By statute,
the Director of the BLM must be filled "by the President, by and with the advice
and consent of the Senate." *Id*. § 1731(a). Any temporary appointment must
comply, therefore, with the "exclusive" process for making temporary
appointments set out in the FVRA. 5 U.S.C. § 3347.

Congress prescribed particular relief for violations of the FVRA: that "any function or duty of a vacant office" performed by a person not properly serving under the statute "shall have no force or effect." 5 U.S.C. § 3348(d). Unless the President uses the procedures of the FVRA to temporarily fill the open position, the "office shall remain vacant," and in the case of a sub-cabinet agency, "only the head of [the] Executive agency" can perform the functions or duties of the vacant office. *Id.* § 3348(b). The BLM Director position has been vacant for nearly four years. Only the Secretary of the Interior can perform functions or duties of the BLM Director.

For a full description of the factual and legal background underlying this case, the Court directs Parties to the Court's previous Order. (Doc. 25 at 2–7). The Court declared in that Order that Pendley had served unlawfully as Acting BLM Director for 424 days. (Doc. 25 at 34). He had not been properly appointed to the position, and instead had exercised authority as Acting BLM Director through a series of unlawful delegations. *Id.* at 24–31. Pendley's service violated the FVRA and APA. *See* 5 U.S.C. §§ 3348(d), 706(2)(A). Any exclusive function of the BLM Director performed by Pendley is invalid. 5 U.S.C. § 3348(d).

The Court found in its September Order that Pendley had performed functions exclusive to the BLM Director when he participated in the approval of two RMPs: the Lewistown RMP and the Missoula RMP. (Doc. 25 at 27); BLM,

Record of Decision and Approved Lewistown Resource Management Plan (July 2020); BLM, Record of Decision and Approved Missoula Resource Management Plan (July 2020). Pendley analyzed the comments and protests submitted regarding the Lewistown RMP and Missoula RMP. Regulations require the BLM Director alone to consider and resolve recommendations and protests on RMPs. *See* 43 U.S.C. § 1701(a)(8); 43 C.F.R. §§ 1610.3-2(e), 1610.5-2(a)(3).

Following Pendley's review, BLM published in the Federal Register that the "BLM Director reviewed all protest issues for the proposed planning decisions . . . concluded that the BLM Montana State Director followed the applicable laws. . . . The BLM Director denied the protests, and that decision is the final decision of the US Department of the Interior." (Doc. 10-1 at 11). BLM further asserted in its Federal Register notice regarding the RMPs that "[a]ll protests have been resolved and/or dismissed by the BLM Director." *See, e.g.*, Notice of Availability of the Record of Decision and Approved Resource Management Plan for the Lewistown Field Office, Montana, 85 Fed. Reg. 47,239, 47,239 (Aug. 4, 2020).

Plaintiffs request in their supplemental briefing that the Court set aside these two RMPs as well as the Miles City RMP amendment. (Doc. 26 at 4–5); BLM, Record of Decision and Approved Miles City Field Office Resource Management Plan Amendment (Nov. 2019). Plaintiffs note that Pendley similarly exercised the Director's exclusive authority to resolve protests to the Miles City RMP

amendment. (Doc. 26 at 4–5). The Court agrees with this conclusion. The Court sets aside the Lewistown RMP, Missoula RMP, and Miles City RMP amendment as unlawful under the FVRA and the APA. They have "no force or effect." 5 U.S.C. §§ 3348(d).

## II.   Federal Defendants' Arguments

Federal Defendants argue in their own supplemental briefing that contrary to the federal register, the administrative record, and the assertions of Interior and White House staff, Pendley took "no relevant acts . . . within the Director's exclusive authority." (Doc. 28 at 1). Federal Defendants argue that assertions in the record that show Pendley's actions are merely "formal but imprecise" references to "the Director's role" in the RMP approval process. *Id*. The record fails to support this argument. As noted above and in the Court's September Order, Pendley actually exercised the exclusive authority of BLM Director and the Executive Branch repeatedly presented Pendley as Acting Director. (Doc. 25 at 24–28). Pendley exercised those authorities under an unlawful series of delegations in violation of the Appointments Clause the FVRA. *See id*. at 28–31.

Federal Defendants now assert for the first time that "Mr. Pendley performed no action in connection with the Lewistown and Missoula RMPS" but rather those duties were "delegated to another BLM Official." (Doc. 28 at 3). Federal Defendants justify this position through a new legal argument that BLM

Director responsibilities over the RMP process are not in fact exclusive to the BLM Director. *Id.* at 5. These novel and last-ditch legal arguments go beyond the scope of the remedy phase and introduce hundreds of pages of new factual records that could have—and should have—been introduced at the summary judgment stage. (Doc. 25 at 30–31 (discussing Federal Defendants' failure to use Rule 56(d) to identify facts in dispute)).

Even if the Court were to accept the argument that BLM Director authorities are delegable and that the Federal Register and other indications of Pendley's involvement were "formal but imprecise" typos that should be ignored, the act of delegation must be proper. As an acting Interior official noted, those authorities can be delegated "to an official designated *by the Director*." (Doc. 17-2 at ¶ 16 (emphasis added)). *See also* (Doc. 28-2 at ¶¶ 8 – 16 (describing the "re-delegation of that authority" from the BLM Director to lower officials)). Pendley served as the Acting BLM Director at the time of this apparent subsequent delegation. The ability to exercise the authority—or to delegate that authority—proved improper. Federal Defendants again attempt to use a series of delegations to justify Pendley's improper exercise of BLM Director authority. These new arguments based on new legal arguments and new records similarly fail, particularly after the Court has granted summary judgment.

7

The Court emphasizes again the injunctive relief currently in place against Federal Defendants. (Doc. 25 at 34). The Interior Solicitor announced publicly that the "Department will comply with the Court's Order." Other officials, including Pendley, appear more reticent in their acknowledgment of the effect of the Court's September Order. The Court emphasizes again its previous finding: Only the Secretary of the Interior can perform functions or duties of the BLM Director.

## III.   Amicus Filing

Conservation Groups filed a motion for leave to file a brief as amici curiae to provide "information on a range of [] projects throughout the West and beyond" that may be unlawful as a result of the Court's September Order. (Doc. 27 at 3). The motion indicates that the briefing would highlight BLM "planning decisions in Alaska, Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, Ohio, Oklahoma, Oregon, Texas, Utah, Washington and Wyoming." *Id.* at 3.

The Court remains mindful of its limited jurisdiction under Article III. Conservation Groups are not party to this case and seek to broaden remedies "beyond the State of Montana." *Id*. at 7. An amicus typically may not "introduce an issue into a case or seek relief that is not raised or requested by the parties." *United States v. Bd. of Cty. Commissioners of the Cty. of Otero*, 184 F. Supp. 3d 1097, 1117 (D.N.M. 2015) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 n.4 (1991) ("[W]e do not ordinarily address issues raised only by amici.")),

*aff'd* 843 F.3d 1208 (10th Cir. 2016); *cf. GST Tuscon Lightwave, Inc. v. City of Tuscon*, 1998 WL 42251 at *3 n.1 (9th Cir. 1998) ("[A]n amicus curiae is not a party to the litigation, and we are not bound to provide relief to the amicus apart from the relief appropriate to the actual parties." (citation omitted)). Plaintiffs represent the sovereign interests of Montana and sought to redress harms within its sovereign territory. Plaintiffs note explicitly that the two RMPs and RMP amendment they identify "are likely not the only examples of Pendley unlawfully exercising the Director's duties and functions." (Doc. 26 at 6). The RMPs represent, however, the only actions Plaintiffs seek to invalidate pending the discovery of evidence of activities that "have had a significant effect on the state of Montana." *Id.* at 7.

The Court sought briefing from the Parties on what actions taken by Pendley fall within the BLM Director's duties and functions. (Doc. 25 at 34). Plaintiffs identified three such actions. (Doc. 26 at 8). Federal Defendants identified none. (Doc. 28 at 1). Despite Federal Defendants' disagreement with the exercise and apparent refusal to engage in such a search in good faith, it remains probable that additional actions taken by Pendley that should be set aside as unlawful. The Court will not grant relief, however, beyond the relief sought by the Parties to the case. The Court's limited remedy tracks with other courts granting relief under the FVRA and APA for unlawful exercise of authority. *See, e.g.*, *Casa de Maryland,*

*Inc. v. Chad F. Wolf*, Case No. 8:20-cv-022118-PX (D. Md. Sept. 11, 2020)

(enjoining enforcement of rules changed by an unlawfully serving acting official in

a manner limited to those involved in the case); *L.M.-M. v. Kenneth T. Cuccinelli*

*II*, Case No. 1:19-cv-02676-RDM (D.D.C. Mar. 1, 2020) (invalidating the reduced-

time-to-consult and prohibition-on-extension directives under the FVRA and APA

issued by an unlawfully serving acting official in a manner limited to those

involved in the case). Conservation Groups remain free to file suit in the

appropriate federal district court to challenge land management decisions they

have identified as potentially unlawful.

## ORDER

Accordingly, **IT IS ORDERED** that:

- The Court declares that the Lewistown RMP, Missoula RMP, and
  Miles City RMP amendment are unlawful and must be set aside under
  5 U.S.C. § 3348(d)(1) and 5 U.S.C. §706(2)(A);

- Conservation Groups' motion for leave to file an amicus (Doc. 27) is
  **DENIED**.

Dated the 16th day of October, 2020.

Brian Morris, Chief District Judge
United States District Court